62    15|
83   633|

62    15
94   123

62    15
98   207.

62    15|
106   503|

## Thomas C. Welch and Eleanor Welch v. Henry Whelpley.

62    15
f121   172

62    15|
e139  ¹572|
139  ¹573

62    15|
f144  ²238|

62    15
f148  ³434|

*Parol contract—By which a father agreed to give eighty acres of land to his daughter and son-in-law—And help them improve the same—In consideration of their making it their home—It being near the father's residence—Which condition they complied with—Will be enforced in equity —Such contract, though vague as to term of residence and extent of improvements, is not altogether indefinite—And must be considered in the light of ordinary conduct—Making a man's home in a certain place— Does not imply his residing there for life—Or for any fixed period—Such home is the place which, for the time at least, he does not contemplate changing—But expects to retain, in the absence of some unforeseen event making a change desirable or necessary—Contract first stated substantially performed when complainants, in good faith, fixed*their home on the land—Legal remedy being inadequate, a conveyance of the land will be decreed—Mutuality—Objection of want of, without force if part of contract difficult of enforcement has been performed—Laches—Not imputable to complainants for delay in bringing suit—Where all parties interested have recognized their rights under agreement sought to be enforced, until shortly before bill is filed—Parol agreement to convey land in consideration of marriage of vendee—Not taken out of statute of frauds by such marriage.*

1. A father *verbally* agreed with his daughter that if she would marry a

certain suitor he would give her eighty acres of land and help her improve it. The marriage took place, and something was done towards the improvement of the land, but a separation occurred, and the daughter returned to live with her father. In 1868 she was married to complainant Welch, who, in the spring of 1869, was considering an offer of *steady* employment in a town some sixteen miles distant from his father-in-law's residence, and which he deemed it wise to accept. Thereupon the father-in-law, who wished to keep his daughter near him, proposed to give complainants the eighty acres of land before promised to his daughter, and to help them improve it, on condition that the son-in-law should reject said offer of employment, and settle upon the land and live there; which offer was accepted, and complainants thereafter resided on said land, and made valuable improvements thereon. In 1876 the father removed some $600 worth of timber from the land, that being the original cost to him of the same. In 1885 he was divorced from his wife, who, prior to the filing of complainants' bill, released to defendant her dower right in the land, which land he refused to convey to complainants, and they filed a bill to obtain the specific performance of the contract.

*Held*, that while the contract is somewhat vague as to the *time* the residence on the land was to continue, and the *extent* of improvements to be made, and, if unperformed, difficult of adjustment, it is not altogether indefinite, and must be considered in the light of ordinary conduct; that when a man makes his home in a particular place he does not thereby absolutely make it his residence for life, or for any fixed period; that a man's home is that place which, for the time at least, he does not contemplate changing, and which he expects to retain, unless some event not in view at time of selecting it may make such change desirable or necessary.

*Held*, further, that when in consideration of said agreement complainants fixed their home on the land in question, in good faith, the contract was substantially performed on their part, and, as no *legal* remedy would be at all adequate, a conveyance of the land will be decreed pursuant to the prayer of complainants' bill.

2. In a suit for the specific performance of a *parol* contract to convey land, an objection on the ground of want of mutuality is of no force if the part of the contract difficult of enforcement has been actually fulfilled.

3. Where a daughter and her husband entered upon and improved a parcel of land belonging to her father, under a *parol* agreement for its conveyance to them in consideration of their so making the land their home, and *all* parties interested recognized the rights of the daughter and her husband under *such* agreement for a series of years, and until shortly before a bill was filed by them to enforce the execution of such deed,—

*Held,* that no serious harm was done by the delay in seeking such relief, and a decree was granted as prayed for.

4. A *parol* agreement to convey land in consideration of the marriage of the vendee is not taken out of the statute of frauds by such marriage.

Appeal from Van Buren. (Mills, J.) Argued June 9 and 10, 1886. Decided June 17, 1886.

• Bill filed for the specific performance of a *parol* contract to convey land. Complainants appeal. Decree reversed and one entered granting relief prayed for. The facts are stated in the opinion and head-notes.

*Crane & Breck,* for complainants:

Cited following Michigan authorities in support of claim to relief prayed for in bill: How. Stat. § 6183; *Bomier v. Caldwell,* Harr. Ch. 67; *Weed v. Terry,* 2 Doug. 351; *Twiss v. George,* 33 Mich. 253; *Kinyon v. Young,* 44 Id. 339; *Lamb v. Hinman,* 46 Id. 113; *Dowling v. Bergin,* 47 Id. 188; *Bigbee v. Bigbee,* 50 Id. 467; *Dragoo v. Dragoo,* Id. 573; *Fairfield v. Barbour,* 51 Id. 57.

Also the following Illinois cases: *Stevens v. Wheeler,* 25 Ill. 308; *Kurtz v. Hibner,* 55 Id. 518; *Wood v. Thornly,* 58 Id. 468; *Langston v. Bates,* 84 Id. 524; *Bohanan v. Bohanan,* 96 Id. 594; *McDowell v. Lucas,* 97 Id. 492. Also, *Allison v. Burns,* 107 Penn. 56.

• *O. N. Hilton* and *Lester A. Tabor,* for defendant:

The *alleged* contract is not one capable of enforcement by specific performance, being at the most a *parol* gift of real estate, and void under How. Stat. § 6179.

Title to land is not permitted to rest in parol, but is evidenced by deed, which cannot be changed by parol testimony of promises and agreements relating thereto.

Part performance cannot save the alleged contract and authorize its enforcement.

If there is a remedy at law for the damages sustained by the party partly performing, equity acquires no jurisdiction: *Peckham v. Balch,* 49 Mich. 179.

As to what is necessary to be shown, see *Kinyon v. Young,* 44 Mich. 339.

The " part performance " relied on must refer *solely* to the agreement sought to be enforced, and if the acts claimed to

amount to such part performance can be reasonably accounted for on other grounds, and the claim is contested, specific performance will not be decreed: *Cronkhite v. Cronkhite,* 94 N. Y. 323.

The bill fails to allege any *time* when the deed was to be executed, yet such allegation, with proof that the time had elapsed and deed had been refused, is essential to make out complainants' case. If complainants ever had any rights, their *laches* will prevent a court of equity from enforcing them : *Smith v. Lawrence,* 15 Mich. 499 ; *Dragoo v. Dragoo,* 50 Id. 573.

Specific performance is not of right, and will be refused where inequitable : *Chambers v. Livermore,* 15 Mich. 381 ; *Munch v. Shabel,* 37 Id. 173 ; and rests in the sound discretion of the court : *Rust v. Conrad,* 47 Id. 449.

The *actual* consideration for the contract, and its payment, are essential : *Purcell v. Coleman,* 4 Wall. 513 ; *Wright v. Wright,* 31 Mich. 380 ; and the contract must be proved in the clearest manner, and substantially as set up in the bill : *Wilson v. Wilson,* 6 Mich. 9.

Possession of premises after an alleged gift is sufficiently explained by the relationship of father and son existing between the parties : *Jones v. Tyler,* 6 Mich. 364.

There was no mutuality between the parties under the alleged contract, and without this it cannot be enforced : *McMurtrie v. Bennette,* Har. Ch. 124; *Hawley v. Sheldon,* Id. 420 ; *Chambers v. Livermore,* 15 Mich. 381 ; *Maynard v. Brown,* 41 Id. 298.

The contract cannot be *wholly* enforced, for complainants cannot be decreed to make this land their *permanent* home : *Youell v. Allen,* 18 Mich. 107 ; *Buck v. Smith,* 29 Id. 166.

CAMPBELL, C. J. This was a bill filed to obtain specific performance of an agreement claimed to have been made by defendant, father of complainant Eleanor Welch, whereby he agreed, in substance, that if his son-in-law and daughter would settle down on the premises in question, near him, he would convey them the land.

As complainants represent the matter, Mrs. Welch was, when quite young,—about 16 or 17 years old,—sought in marriage by one Bannon, and defendant promised that if she would marry Bannon he would give her this land, and help improve it. She married Bannon, and something was

done towards improving the land. But the marriage was subsequently broken up, and she continued to live with her father and mother, who then had a son also, much younger, named Eugene Whelpley.

In August, 1868, Eleanor was married to Thomas C. Welch, who had done some work for defendant, and who also worked more or less elsewhere.

In the spring of 1869, Welch obtained employment from one Newcombe, in another town, some sixteen miles away, and had an offer of steady employment, which he thought it was for his advantage to accept. Thereupon it is claimed defendant, who wished to keep his daughter near him, proposed to give them this fifty-five acres of land, and help them to improve it, if they would settle down upon it, and live there, and give up the Newcombe arrangement.

Complainants aver that they acted on and accepted this proposal, and settled on the farm, and it has ever since been their home. They claim, further, that in 1876 defendant desired, and they allowed him, to remove or sell timber enough to repay him the original price which he paid for the land, which cost $600, but has been made, within a few years, more valuable by the construction of a railroad near by.

Complainants, by their own testimony and that of Eugene Whelpley and Mary Whelpley, the former wife of defendant, made out, as we think, very positively the substance of the case relied on. Defendant admits by his testimony the inducement held out to keep his daughter near him, and his anxiety and offer to have them make a home upon the land ; but he denies promising to convey it until his death, when he proposed, in his own mind, to divide his property, giving each child one of his farms.

In 1884 defendant's wife separated from him, and got a divorce for ill-treatment, and at that time it is claimed, and we think appears, that the divorce was supposed to throw a difficulty in the way of a conveyance. Afterwards, however, she arranged matters so as to quitclaim her dower right. Defendant, nevertheless, refused to convey.

So far as the facts are concerned, we think complainants' case made out. Their story is much more reasonable than defendant's. It is not at all likely that a young, industrious man would break up his opportunities of employment, and settle down, as complainant did here, upon what was practically no inducement whatever. Defendant is evidently a very positive and somewhat domineering man, who was attached to his daughter, and anxious to have her near him, and willing, if he could have his own way, to be helpful in many ways. It was natural and proper that she should reciprocate this desire. But it is not at all likely, and it would not be creditable, that her husband should merge his condition and prospects in such a way as to have no assurance whatever that he would reap any reward for his labors and sacrifices.

The principal difficulty in the case is in the somewhat vague character of the dealings of the parties, and in the fact that concessions were now and then made which are claimed now to have indicated there was no contract.

It is objected, in chief, that the contract as shown did not fix any time for the continuance of the residence, or any extent for the improvements to be made on the land.

The contract was, substantially, that Welch should give up any other engagement, and come and settle down upon the property. This, while somewhat vague, and, if unperformed, difficult of adjustment, is not, however, altogether indefinite. It must be considered in the light of ordinary conduct.

When a man makes his home in a particular place he does not thereby absolutely make it his residence for life, or for any fixed period. That is a man's home which, for the time at least, he does not contemplate changing, and which he expects to retain, unless some event not then in view may make it desirable or necessary to give it up. This contract, which, for what was beyond doubt in the eyes of the parties an important and valuable consideration, called on complainants to fix their home on the land in question, was fulfilled when they did so in good faith. It is a purely theoretical

inquiry what length of time was necessary to put this intention beyond dispute, for the occupancy has been permanent, and mainly continuous. It would have been an unusual course to stipulate for any particular length of residence, because all parties, no doubt, considered that the family affection which prompted the movement would continue to influence their common action. The contract was substantially fulfilled when the settlement became fixed.

The fact that it was a family arrangement explains sufficiently both the acquiescence in leaving the property unconveyed, and the allowance of a good deal of unreasonable action by defendant. It is evident that on both sides a great deal was done which the contract never required to be done, and some things were put up with which defendant could not have demanded. A daughter cannot be treated as a stranger would be, and children often submit to unreasonable requests of parents without deeming it necessary to protest against it. In the long run, matters are apt to balance, unless there is a family disturbance. In our view, the rights of these parties became fixed many years ago, and cannot now be unsettled by subsequent submissions or exactions, unless designed as a waiver.

The objection for want of mutuality is not of any force, when the part of the contract difficult of enforcement has been actually fulfilled. As no legal remedy would be at all adequate, the remedy in equity must prevail, unless there is some other obstacle.

The objection that laches should prevent relief has no force here, inasmuch as, until after the divorce proceedings, both parties evidently treated the complainants' rights alike; and, where there is continued acquiescence, no serious harm is done by delay to seek relief. In the case of *Ingersoll v. Horton*, 7 Mich. 405, the delay was quite as long as in the present case.

There is, we think, no force in the objection that this land was already the property of Eleanor Welch before the alleged contract. There is no doubt in our minds that it was promised her; but the promise was within the statute of

frauds, and there was no sufficient performance to take it out, and she made no such claim. There was a double difficulty, the agreement being concerning lands, and also in consideration of marriage; and it has always been held that marriage could not take the contract out of the prohibition, because it is the very thing, in contemplation of the law, requiring the formality of the writing to evidence the undertaking.

Mrs. Welch made no claim inconsistent with the present one, and her former imperfect equities cannot destroy her present ones.

We do not think there is any reason why the agreement should not be carried out.

The decree must be reversed, and relief granted as prayed, with costs throughout.

The other Justices concurred.