## CLARK v MAURER *et al.*

**Specific Performance:** SALE OF LAND : BAD FAITH OF PURCHASER : EVIDENCE. The evidence in this case, though conflicting (see opinion), *held* to show that defendant left the land in question with W., a real-estate broker, to be sold on commission; that he had reason to believe, and did believe, that W. and plaintiff were members of the same firm, and that it was the firm, and not W. alone, that was to sell the land; that at all events W. and plaintiff had been partners, and were at the time on very intimate terms, and mingled more or less in land and other business; that W. contracted the land to plaintiff for a very inadequate price, and that defendant executed the contract without reading it, or knowing that plaintiff was the purchaser, after he had been offered a greater price, on the statement of W. that to refuse to execute it would cause litigation. After he learned that plaintiff was the purchaser he refused to make the deed, and this action is to compel specific performance. *Held—*

(1) That plaintiff was not a purchaser in good faith and could not have the aid of equity to consummate his attempted fraud.

(2) That although the evidence of the fraud might not be sufficiently strong to justify a court in setting aside the contract on that ground, the same degree of evidence is not essential to justify the refusing to plaintiff the relief asked, since such relief is largely discretionary with the court, and depends chiefly on the good faith of the party asking it.

(3) That defendant's negligence in not reading the contract did not justify an order for specific performance notwithstanding plaintiff's bad faith.

*Appeal from Woodbury District Court.*—HON. GEORGE W. WAKEFIELD, Judge.

FILED, MAY 28, 1889.

ACTION for specific performance of contract for sale of lands. Judgment for the defendants, and plaintiff appeals.

*Joy, Hudson & Joy* and *Craig L. Wright,* for appellant.

*J. H. Swan, M. Neilon,* and *S. F. Lynn,* for appellees.

GRANGER, J.—On the sixteenth day of February, 1887, the defendant J. G. Maurer made to the plaintiff a written contract, by the terms of which he agreed to make to the plaintiff a deed of twenty acres of land in Woodbury county, if certain specified payments should be first made. No question is made as to payments, but the defendant J. G. Maurer seeks to avoid the decree for specific performance against him sought in this case, on the ground of alleged fraud by plaintiff in obtaining the contract. The land in controversy is situated about three miles from the business center of Sioux City. The land was bought by Maurer of one Camp on the fifteenth day of February, 1887, for fifty dollars an acre, and was bought with a view to speculation. One McPherson, having a mortgage on the premises, is a defendant in the case, and has some interest with Maurer in the profits of the transaction. At this time the plaintiff and his brother were real-estate dealers in Sioux City. J. W. Weldon was at the time residing in Sioux City, and was a brother-in-law to the plaintiff, and there is some claim that Weldon was at the time a partner with Clark Bros. On the day of the purchase of the land by Maurer he went to the office of Clark Bros. to make inquiry as to the price of lands; and as to what occurred there and afterwards there is much conflict in the testimony, but, as a result of that and other conferences, the contract in question was made. The essential dispute or controversy between the parties is this: Maurer maintained that, as a result of his talk with Weldon and Clark, he left the land with the firm, composed of whoever it might be, for sale, and for the sale they were to receive a commission of one hundred dollars. The claim of the plaintiff is that the firm of Clark Bros. had no contract or arrangement whatever with Maurer, but that he left the land with Weldon for sale, for the specified commission, and that Weldon, in pursuance of that arrangement, sold the land to the plaintiff, and that in fulfillment thereof the contract in question was made.

From the testimony we are satisfied that when Maurer went to the office of Clark Bros. he went there to consult the firm, and there was much to cause one not familiar with the actual facts to suppose Weldon was a member of the firm. Weldon had been a partner with the plaintiff, and the sign at the entrance bore the name of Weldon as a member of the firm. It is true that the plaintiff and Weldon, in 1884, organized the firm of "Clark & Weldon," and as such engaged in the real-estate and other business, and did business in the same place as on the fifteenth of February, 1887. In 1885 the firm was changed to "Clark Bros. & Weldon," and continued the same business (real-estate and trading land for goods). There was a firm of "J. W. Weldon & Co.," and Clark Bros. had an interest in that firm. January 1, 1886, there seems to have been a dissolution of the firm of Clark Bros. & Weldon, and a notice of the dissolution published in the Sioux City Journal, but no showing that Maurer ever knew of the dissolution. Weldon and the plaintiff have lived in the same house since January, 1886, and during all the time they have mingled together more or less in land and other business.

From a careful review of the testimony, conflicting as it is, we are led to the conclusion that Maurer, when he left the land for sale, supposed he was leaving it for sale by a firm of which the plaintiff was a member. Many witnesses were examined as to the value of the premises at that date, and under such testimony, fairly considered, its market value was not less than one hundred and twenty-five dollars per acre. The estimates by dealers put it from seventy-five to two hundred dollars. The sale to plaintiff was made at sixty-dollars. On the next day Maurer was offered seventy-five dollars, and this was made known to Weldon and plaintiff before the contract was signed, and hence Maurer signed it in the face of a much better offer, but urges that he only did so under the representations by Weldon and plaintiff that plaintiff had sold the land to an outside party, residing in Kansas City, that

money had been paid thereon, and that a failure to comply would result in litigation. As to all this there is also a conflict of evidence, but we think it preponderates with the defendant.

The plaintiff is contradicted as to his statements by several witnesses, wherein he is said to have stated that he made the sale for Maurer. Weldon and Harry Clark are also contradicted as to statements made by them seriously impairing their testimony. It is true that Maurer is in the same manner contradicted, but his position has far more corroboration than that of the plaintiff. Maurer signed the contract, and it contained the name of plaintiff as grantee. He says in testimony that he did not read the contract, or know that Clark was the grantee. If the plaintiff was seeking an enforcement of the contract otherwise than by decree for specific performance, we should attach far more significance to this feature of the case. It is true that he should have read and known its contents, but, conceding the fact of negligence in that respect, we do not understand that it so changes the rule as to entitle a party to a decree for specific performance where he is himself in the wrong. The duty as to granting this relief is largely discretionary with the court, and its exercise does not depend so much upon the fact of negligence of the party against whom it is sought as upon the good faith of the party asking it. To justify a refusal of the decree in this case, it is not necessary that our action should be based on the same degree of proofs that would justify setting aside the contract for fraud, or even mistake. It should be granted only when equity and good conscience seem to require it. The rule, as followed by this court, is clearly stated in *Palo Alto Co. v. Harrison*, 68 Iowa, 81. Whatever may be the rights of the plaintiff in an action at law, we do not think he makes that equitable showing in his own behalf to entitle him to the relief prayed.                                    AFFIRMED.