University of Des Moines, Appellee, v. Polk County Homestead and Trust Company, Appellant.

1. **Contract to Convey Real Estate**: CONSTRUCTION: SPECIFIC PERFORMANCE. The defendant, in the year 1884, agreed to convey to the plaintiff certain land for use as a college campus, and certain lots to such persons as the same might be sold to by the plaintiff. In consideration thereof the plaintiff agreed to erect two college buildings on said campus, one of which was to be completed in time for the beginning of the school year in 1885, and the other by June 1, 1886. There was nothing in the terms of said agreement making the time for the erection of said building of the essence of the contract, but it was expressly provided that, if the plaintiff should fail to maintain a "college of standard grade" on said grounds for a period of one year, at any time within the next ten years, then the agreement should be null and void, and said grounds should revert to the defendant, or the plaintiff should pay the value thereof in cash. The first of said buildings was completed within the time provided, but the

second was not completed within the time stipulated, nor within an extension of time granted therefor, yet the plaintiff was permitted to proceed with its completion, at a cost of about fifteen thousand dollars, without any notice from the defendant that it intended to claim a forfeiture of any of the plaintiff's rights because of said default. *Held*, that the plaintiff's default was no defense to an action for specific performance, the second building having been completed prior to the commencement of this action.

2. ———: ———: ———: COLLEGE OF STANDARD GRADE: EVIDENCE. It appearing from the evidence that the plaintiff was financially weak at the time the contract was made, that its condition and prospects were then known to the defendant, and that the buildings contemplated by the contract were of limited capacity; yet that the courses of study in the college were up to the average of other colleges in the state, that its apparatus was sufficient for ordinary purposes, and that its instructors were of good ability and well qualified for their respective positions, though receiving small salaries and teaching in the preparatory department, *held*, that there was a performance of the agreement to maintain a college of "standard grade" within the contemplation of the parties.

3. ———: ———: ———: MUTUALITY. The valuable part of the contract having been performed by the plaintiff, *held*, that specific performance would not be denied because the number of years which it was agreed to maintain the college had not yet elapsed.

*Appeal from Polk District Court.*—Hon. Charles A. Bishop, Judge.

Wednesday, January 18, 1893.

Action in equity to compel the specific performance of a contract for the conveyance of certain real estate. Decree for the plaintiff. The defendant appeals.—*Affirmed.*

*Kauffman & Guernsey* and *St. John & Stevenson*, for appellant.

The plaintiff seeks, as it terms it, the specific performance of a contract. It is clear from all the authorities that the right to such a remedy rests alone in the sound discretion of the chancellor. *Palo Alto County v. Harren*, 68 Iowa, 90. It is not necessary to

say in a contract that time is of the essence, for, if it should be so stated, and the court could plainly see that such was not the fact, and was not so intended, it would be disregarded. The question is, what did the parties mean? If they in fact meant that a thing should be done by a certain time, the court could not say that another time would do as well. The doctrine is well stated in the case of *Carter v. Phillips*, 10 N. E. Rep. (Mass.) 503. The intention of the parties as evidenced in any way should, and does, govern. *King v. Ruckman*, 20 N. J. Eq. 316, 344; *Taylor v. Longworth et al.*, 14 Peter, 172; *Young v. Daniels*, 2 Iowa, 129; Leading Cases in Equity, 1062; *Thurston v. Arnold*, 43 Iowa, 46; Fry on Specific Performance, sec. 715; *Holt v. Rogers*, 8 Peters, 433; *Brazier v. Gratz*, 6 Wheat. 533; Story's Equity, 769, 770; 1 Sudgen on Vendors, 356, and cases cited; *Parsons v. G. H. & Co.*, 45 Iowa, 36; *Bryan v. Loftus*, 39 Am. Dec. 242. In *Garnet v. Mason*, 2 Brock, 185, the court held: "That where time is really material to the parties, the right to the specific performance may be dependent on it." See, also, *McKay v. Carrington*, 1 McLean, 50. So in a contract to sell and convey a patent right within a reasonable time, it was held that time was material, and that an offer to perform in fifteen months was too late. *Bellas v. Hays*, 9 Am. Dec. 385, 386; *Benson v. Cowell*, 52 Iowa, 138; *Nodine v. Greenfield*, 7 Paige, 544. In the case of *Pratt v. Carroll*, 8 Cranch, 476, Chief Justice Marshall refused specific performance of the contract, because plaintiff was in default, and circumstance had so changed in the meantime that the chief inducement to the contract could not be accomplished. *Hoyt v. Tuxbury*, 70 Ill. 339; *Merritt v. Brown*, 19 N. J. Eq. 292. It is one of the fundamental principles on which a court of equity proceeds, that if, for any reason, specific performance can not be enforced against the one asking

it, he, for that reason, is refused the aid of the court. As illustrative of this doctrine, see *Marble v. Ripley*, 10 Wall. 340; *Morris v. Fox*, 45 F. R. 406; Fry on Specific Performance, sec. 440; *Wakeman v. Barker*, 22 Pac. Rep. (Cal.) 113; Waterman, secs. 196, 197.

*Cole, McVey & Cheshire* and *C. P. Holmes*, for appellee.

The contract' having been partially performed should be enforced in its entirety. Waterman on Specific Performance, section 435; *Frame v. Frame*, 9 S. E. Rep. 906; *Wallis v. Pidge*, 4 Mich. 572. The extension of time was unconditional, and did not import into it any condition of forfeiture of the contract, but the contract as extended, was denuded of this forfeiture, and was as well a waiver thereof if it ever existed. This extension of time, and the expenditure of money thereunder was a new contract, and a waiver of the forfeiture clause as to the school. *Van Vranken v. R'y Co.*, 55 Iowa, 135; Waterman on Specific Performance, sections 481, 482, and cases cited; *Leaird v. Smith*, 44 N. Y. 618; *Wallis v. Pidge*, 4 Mich. 570; *Miller v. New York*, 53 Barb. 653. Equity presumes that time is not of the essence of the contract. Neither are forfeitures favored by courts of equity. *Thurston v. Arnold*, 43 Iowa, 45, 46; *Grigson v. Riddle*, 7 Vesey, 268; *Matthews v. Gilliss*, 1 Iowa, 242; *Young v. Daniels*, 2 Iowa, 130; Pomeroy's Equity Jurisprudence, section 1402. Section 427 of Waterman on Specific Performance treats of the proposition that a literal performance is not required, and so lays down the rule that all that will be required is a substantial compliance. *Phillips v. Soule*, 9 Gray, 233; *Tenbroecks v. Livingston*, 1 John's Chancery, 357; *McCorkle v. Brown*, 9 Sm. & Marsh. 167; Story's Equity, sections 771, 775; *Hays v. Hall*, 4 Porter, 374; *Wynn v. Garland*, 19 Ark. 23; *Hulmes v. Thorpe*, 5 N. J. Eq. (1 Halt) 415; *Green*

*v. Lord*, 22 Bear. 625.   Time is not deemed in equity
of the essence of the contract, unless the parties have
so treated it, or it necessarily follows from the nature
and circumstances of the contract.   Story's Equity
Jurisprudence, section 776, and extensive footnote;
*Matthews v. Gilliss*, 1 Iowa, 242; *Brumfield v. Palmer*,
7 Blackford, 227; *Brashier v. Gratz*, 6 Wheat. 528;
*Appeal of Born*, 19 Atl. Rep. 337;   *Gayden v.
Louisville, N. O. & T. R'y Co.*, 1 S. Rep. 792.   Part
performance by the vendee, and acquiescence by the
vendor, prevents the latter from putting an end to the
contract at his mere will.   If the vendor was to convey
and be paid afterwards, and he failed to convey, he is
to be treated as a mortgagee or trustee, so ·far as lapse
of time is concerned, and can not avoid the contract
because the vendee did not pay on the day.   *Taylor v.
Longworth*, 14 Peter, 172; *Edgerton v. Peckham*, 11
Paige's Chancery, 352.   The failure to perform an under-
taking on the part of plaintiff, which is not a condition
precedent, will not prevent specific performance of the
contract.   *Minneapolis R'y Co. v. Cox*, 41 N. W. Rep.
24; *Brock v. Hidy*, 13 Ohio St. 309;   *Keller v. Fisher*,
7 Ind. 718;   *Brumfield v. Palmer*, 7 Blackford, 227;
*Barnard v. Lee*, 97 Mass. 92.   The time of the erection
of the College building was neither an essential or
material part of the undertaking of the plaintiff.   The
undertaking to erect the College building, after
the extension of time, was a condition subsequent.
Waterman, section 437, citing *Walker v. Wheeler*, 2
Conn. 299; *Hancock v. Carltor*, 6 Gray, 39; *Nooman
v. Ortor*, 21 Wis. 283.   The plaintiffs were put in
possession and made valuable improvements.   The
contract being entire, this possession extends to the
whole property, and the improvements and possession
sion entitle the plaintiff to demand the completion of
the contract by conveying the lots.   Waterman on
Specific Performance, 468; *Armstrong v. Pierson*, 5

Iowa, 305–327; *Frame v. Frame*, 9 S. E. Rep. 906; *Oskaloosa College v. Hull*, 25 Iowa, 155. It is true as a general proposition that a contract must be mutual to be enforced by either of the parties against the other. Upon this question we say: *First*, that this contract could be mutually enforced against either; *second*, whether it could be so mutually enforced or not is wholly immaterial, because the facts in this case, under the authorities, clearly take the case out of the general rule, as we shall show from the authorities. The exceptions being that, where there is part performance, or where complete performance has been made, then the court will enforce specific performance. *Allen v. Cerro Gordo County*, 40 Iowa, 348; *Minneapolis R'y Co. v. Cox*, 76 Iowa, 306; Waterman on Specific Performance, section 199; Story's Equity Jurisprudence, section 772; *Welsh v. Whelpley*, 62 Mich. 15; s. c., N. W. Rep. 744; *Johnson v. Trippe*, 33 Fed. Rep. 530; *Clason v. Bailey*, 14 Johns. Rep. 484; *Ire v. Hunter*, 1 Edwards, Ch. 5; *Wyman v. Garland*, 68 Am. Dec. 198, 199; *Linscott v. McIntyre*, 33 Am. Dec. 602; *Weed v. Enry*, 45 *Id.*, 257; *Robbins v. Knight*, 45 *Id.*, 406; *Kerr v. Day*, 14 Pa. St. 112; *Breckinridge v. Clinkinbeard*, 2 Littell, 127; s. c., 13 Am. Dec. 261; *Pugh v. Good*, 3 Watts & Sergeant (Pa.), 56; s. c., 37 Am. Dec. 534; *Williams v. Lardman*, 8 Watts & S., 55; *Reed v. Reed*, 12 Pa. St. 121; *Ross' Appeal*, 9 Pa. St. 121; *Invon v. Strall*, 19 Pa. St. 467; *Rider v. Maul*, 46 Pa. St. 378; 2 Story's Equity Jurisprudence, section 761; Sugden on Vendors, 105; *Ives v. Hazard*, 4 R. I. 14.

Kinne, J.—It appears that prior to the year 1870 a college was established in the city of Des Moines, on Pleasant street, and known as the "University of Des Moines," the appellee in this case. The original *campus* consisted of about five acres, upon which there

was situated a brick building which was used by the appellee for college purposes. In 1884 said *campus* consisted of about two and one-half acres of land and three lots in the vicinity of said land. The university was not in a flourishing condition. It had very few students, and its property was considerably incumbered. In 1884 the appellant purchased one hundred and sixty acres of land adjacent to and north of the city of Des Moines, and platted it into lots, for the purpose of placing the same upon the market for sale. After this, negotiations were entered into between the appellant and the appellee, for the removal of the appellee's college to this tract of land. These negotiations resulted in a contract being entered into between the parties. The contract provided that the appellant should give to the college a certain tract of land for the *campus;* also, ten per cent. of the amount realized from the sales of all lots included within the addition laid out. A portion of this ten per cent. was to be placed in the endowment fund, and the remainder used for other purposes. In consideration of this agreement on part of the appellant, the appellee agreed to erect at least two buildings on said *campus* tract, and move its college thereon. One of the buildings was to be erected in time for the beginning of the school year in the fall of 1885, when the school was to be opened in said building; and the second building (time having been extended) was to be erected and completed by June 1, 1886. A further provision of the contract was "that if the said University of Des Moines shall fail to maintain a college of standard grade on said grounds for a period of one year, at any time within the next ten years, then this agreement shall be null and void, and the said *campus* grounds shall revert to the party of the first part, or the value of the same shall be paid to said party of the first part in cash, together with all sums of money, principal and interest, received by said

university from the sales of lots, as above described.''

The appellee thereafter sold its property on Pleas-
ant street, took down its building which had been used
thereon, and with the material, and with such other
materials as were necessary, erected one of the build-
ings on the new site within the time fixed by the con-
tract, and opened its school therein.   Subsequently the
contract was modified by striking out the clause provid-
ing for the payment of ten per cent. of the amount
realized from the sale of lots, and in lieu thereof
substituting an agreement to convey to parties to whom
the appellee might sell all the lots in blocks 24 and 28
in the addition heretofore referred to.   The foundation
for the second building provided for in the contract
was put in, and a portion of the materials brought upon
the ground, within the time provided in the con-
tract, but it was not completed; and an extension of
time of one year was granted to the appellee in which
to complete said building.   This second building was,
however, not completed until long after the time pro-
vided in the year's extension.   Another modification
of the contract was made in May, 1886, when one of
the blocks of land in controversy was conveyed by the
appellant to the appellee to enable appellee to incum-
ber it by mortgage to secure the payment of one thou-
sand, five hundred dollars, which was done; and the
appellee immediately thereafter reconveyed the said lot
to the appellant, with the understanding that the
appellee would pay off said incumbrance, and that it
should be paid out of the first proceeds arising from
the sale of lots in that block.   On April 15, 1888, the
appellee sold to one Chapman one of the lots upon
which said mortgage had been given, for the schedule
price fixed between the appellant and the appellee, and
applied to the appellant for a conveyance of the same
to the said Chapman.   The appellant refused to make
such conveyance, and this action was brought for spe-
cific performance.

It appears from the evidence that the appellee opened its school in the building on the new *campus* at the time agreed upon, and has ever since conducted the same therein. The second building was completed in 1888. The buildings, as to size and cost, seem to comply with the terms of the contract. The appellant rests its refusal to execute the conveyance to Chapman on the fact that the appellee failed to erect one of the buildings provided for in the contract within the time therein fixed, as finally extended; also, that it has not, during the continuance of the contract, maintained a college of standard grade; and it also insists that specific performance can not be decreed because the covenants or agreements are not mutual.

I.    Did the failure of the appellee to erect the second building within the time fixed by the contract, as extended, forfeit any of its rights thereunder? It will be observed that, so far as the erection of this building was concerned, time was not expressly made the essence of the contract, nor was any provision made therein to forfeit the contract in case the building was not erected within the time granted. The general rule undoubtedly is that, in the absence of stipulation to the contrary, time is not deemed, in equity, of the essence of the contract, unless the parties have so treated it, or it necessarily follows from the nature and circumstances of the contract. 3 Pomeroy's Equity Jurisprudence, section 1408; Story's Equity Jurisprudence, section 776, and note; 3 Parsons' Contracts, pages 383, 384; *Mathews v. Gilliss*, 1 Iowa, 254; *Thurston v. Arnold*, 43 Iowa, 43. Is there anything in the contract itself which would indicate that, so far as the erection of this building was concerned, it was intended that time should be deemed of the essence of the contract? Have the parties so treated it? Or does such a result necessarily follow from the nature of the contract

1. CONTRACT to convey real estate: construction: specific performance.

itself, or the circumstances which surrounded its execution? Let us look for a moment, at the language of the contract. As to this building, it simply provided it should be erected within a certain time. The contract also provided that the school should be opened on the new *campus* within a certain time.

The material question, which seems to overshadow all others in the contract, is the establishing and maintaining "a college of standard grade." A failure to do this forfeited all of the plaintiff's rights, in accordance with the following provisions of the contract: "It is further agreed and stipulated that if the said University of Des Moines shall fail to maintain a college of standard grade on said grounds for a period of one year, at any time within the next ten years, then this agreement shall be null and void, and the said *campus* grounds shall revert to the party of the first part, or the value of the same shall be paid to the party of the first part in cash, together with all sums of money, principal and interest, received by said university from the sales of the lots above described." So important was this matter of maintaining a college of "standard grade" deemed, that a failure so to do created a forfeiture, by the express terms of the contract. If, as is now contended, a failure to erect the second building within time fixed should have the effect of cutting off a part of the rights of the plaintiff to enforce the contract, would it not have been natural that such result should have been expressly provided for, and not left open to the uncertainties of construction? The silence of the contract in that respect, in view of the fact that forfeiture was provided for a failure to maintain a college of standard grade, is a circumstance, it seems to us, indicative of the defendant's intention. In view of the provisions of the contract, and the situation of the plaintiff,—hereafter more fully considered,—is it not fair to presume

that the parties contemplated that it might be impossible for the plaintiff to complete both buildings within the time fixed? The forfeiture expressly provided for, insured the erection of the first building, and the opening of the school therein, within the time provided, which was, in fact, the most important condition of the contract to be performed by the plaintiff.

Again, it will be noticed that an extension of time for one year, in which to complete the second building, was granted the plaintiff. Nothing was said at this time to indicate that the defendant intended to treat time as the essence of the contract. July 21, 1886, and about thirty days after the expiration of the time allotted the plaintiff in which to complete the second college building, the defendant undertook, by resolution of its board of directors, to forfeit all rights of the plaintiff under the contract, so far as blocks 24 and 28, in the addition heretofore referred to, were concerned. But it does not appear that notice of the defendant's action in that respect was ever given the plaintiff. The defendant knew that, after the expiration of the time fixed in the contract for the completion of the second building, the plaintiff was erecting and did erect it; and in fact it appears to be such a building as fully complies with the terms of the contract, as to size and cost. It permitted the plaintiff to thus expend fifteen thousand dollars or over on the faith of the contract, without notifying the plaintiff that it should treat any of the rights given it under said contract as forfeited by reason of the plaintiff's failure to complete the building within the time fixed. Having so acted as to justify the plaintiff in the belief that the erection of the second building, though not within the time as extended, would be treated as a compliance with the terms of the contract in that respect, the defendant ought not now to be permitted to say that time was in fact the essence of the contract. The objections by the defendant

based upon delay must be held to have been waived by its conduct; for, so far as the plaintiff's knowledge was concerned, the defendant sat silently by, and permitted it to expend money in reliance on the contract as still being in existence, and hence its conduct was inconsistent with an intention to insist upon a literal compliance with its terms. Not until after the second building was completed did the plaintiff know that the defendant claimed to have rescinded the contract, or any part thereof.

It is insisted that one of the inducements for making the contract, so far as the defendant was concerned, was the completion of this building, which would be an additional incentive to persons to purchase lots of the defendant. No doubt the erection of this building within the time contemplated would have had a tendency in that direction. But it does not appear that the defendant suffered any material detriment by reason of the plaintiff's failure to so erect it, and, in the extension of time granted the plaintiff, stress was laid upon maintaining "a college of standard grade," not on the completion of the second building. Waterman on Specific Performance, section 482.

There is another feature of this case which tends to support the view that the defendant did not consider time as especially important, so far as the completion of the second building was concerned. It was agreed that the lots heretofore mentioned should be conveyed as soon as sold by the plaintiff, while by the terms of the contract, as extended, the plaintiff was given two years thereafter in which to erect the building in controversy. It was also provided that, in case of a failure to maintain the school, the proceeds of lots so sold should be paid to the defendant. Now, it is manifest that it was in contemplation of both parties that the lots might all be sold before the time expired within which the building was to be completed. These provisions of the

contract clearly indicate that the central thought of the contract, so far as the defendant is concerned, was to secure the maintenance of a college of "standard grade." This idea is prevalent and prominent in all the contracts and negotiations between these parties.

II.   Did the plaintiff maintain "a college of standard grade" as required by the contract, and for a failure to do which a forfeiture is expressly provided? In determining this question, regard must be had, not only to the express terms, of the contract, but also to the circumstances under which it was entered into, which were then known to the defendant, and in view of which the contract was made. Some of these facts were that the plaintiff was "financially weak," that the school was not prosperous, that it had very few students.   In fact the defendant was fully advised of the character and extent of the school, —its history and prospects.   As is said by the court below, they "knew who constituted its faculty, and what facilities it then had for maintaining and operating a college, and it entered into the contract upon the basis of that knowledge."   So, also, the character and size of the buildings provided for by the contract are important, as indicating what the defendant expected as a fulfillment of the provision for the maintenance of a college of "standard grade."   They were to be a dormitory not less than thirty-eight by sixty-eight feet, and another building, not less than forty by eighty feet, each to cost fifteen thousand dollars.   So far as buildings were concerned, under the contract, there was to be one only which could be used for school purposes, and it forty by eighty feet in size.   It would have to contain a chapel, recitation rooms, room for apparatus, museum, societies, etc.   If we are to take the definition of a college of "standard grade," given by most of the defendant's witnesses, and now insisted upon by the defendant as having been in contemplation

2. ___: ___: ___. college of standard grade: evidence.

of the parties when they contracted, we should find such a building in every way insufficient to carry on such an institution.    The size and cost of the building clearly indicate that no great institution of learning was contemplated by the parties.

The evidence abundantly shows that the courses of study pursued in the plaintiff's college were up to the average of the colleges of Iowa, if not above them; that the professors and teachers were of good ability, and well qualified for their respective positions. It is shown that they worked for small compensation. Surely, that does not affect their ability, nor necessarily their efficiency. It appears that their work has been faithfully and conscientiously done. It is urged that a college can not be a college of "standard grade" when the professors also teach in the preparatory department. If that be so, then it is clear, from the evidence in this case, that there is in Iowa no denominational college of "standard grade." Such double duty is shown by the evidence to be the rule, and not the exception, in colleges in Iowa, generally. It is said that the plaintiff did not have sufficient apparatus to constitute it a college of standard grade. Doubtless, any amount of apparatus which a college might be able to purchase would be useful, but it by no means follows that it would all be indispensable. It appears that it had sufficient apparatus for ordinary purposes. The term "college of standard grade" is elastic, and as we have indicated, must be construed in view of the surroundings of the parties when they contracted, and of the buildings required by defendant, in which the school was to be carried on. We conclude, then, that the plaintiffs have maintained a college of standard grade, in compliance with the contract.

III.    It is insisted that, as it would have been impossible for the court to have decreed specific per-

3. —: —: —. formance in favor of the defendant, and
mutuality. against the plaintiff, under this contract,
it follows that no decree can be entered for the plaintiff;
and it is said that one of the conditions of the contract
is that the plaintiff shall maintain a college of standard
grade for ten years, and that said time has not yet
elapsed, and that this court can not enforce such under-
taking.   The general rule, no doubt, is that a decree
for specific performance can only be had when the
obligations are mutual.   To this rule there are excep-
tions.   Thus, where the provisions of the contract were
not within the power of a court of equity to enforce,
yet if they have been performed, the one who has thus
complied with the contract may have a decree enforc-
ing specific performance on part of the other party.
*Allen v. Cerro Gordo County*, 40 Iowa, 349;   Waterman
on Specific Performance, 265;   Story on Equity Juris-
prudence, section 772;   *Welch v. Whelpley*, 62 Mich. 15,
28 N. W. Rep. 744.   So it has often been held that
when there has been a part performance of the terms
of the contract, or where that part of the contract
which is difficult of enforcement has been actually per-
formed, the objection of want of mutuality is of no
force; and especially so where there would be left to
the party no adequate legal remedy.   *Welch v. Whelp-
ley*, 62 Mich. 15, 28 N. W. Rep. 744;   *Wynn v. Garland*,
68 Am. Dec. 198, and cases cited;   *Breckinridge v.
Clinkinbeard*, 2 Litt. (Ky.) 127;   *Pugh v. Good*, 3 Watts
& S. 56.   The valuable part of this contract has been
performed by the plaintiff, and it is not in default
because it has not maintained a college of "standard
grade" for the ten years—that time not yet having
elapsed; and under such circumstances it would be
most inequitable to refuse a decree compelling specific
performance.   In *Minn. & St. L. R'y Co. v. Cox*, 76 Iowa,
306, this court said:   "Counsel insists that, as the
courts will not compel the plaintiff to maintain a depot

at the place designated in the contract, which is of the consideration thereof, the mutuality of the contract, which is essential to authorize a decree of specific performance, is wanting.   But it can not be doubted that the plaintiff may be compelled to maintain the depot after it is erected, and defendants have performed their part of the contract.   The plaintiff, having built the depot under its contract, may demand of defendants performance on their part.   If it fails to maintain the depot, it will surely be answerable to defendants for the breach of the contract.''   The authorities above referred to, and many others that might be cited, fully meet the defendant's objection of want of mutuality.

It is conceded that the specific execution of a contract, in equity, is not a matter of absolute right, but it is a remedy, the right to which rests alone in the sound discretion of the chancellor—a discretion controlled by established principles of equity, in view of all the facts and circumstances attending the case presented.   3 Pomeroy's Equity Jurisprudence, section 1404; 1 Story on Equity Jurisprudence, section 742; *Grimes v. Hamilton County*, 37 Iowa, 290; *Palo Alto County v. Harrison*, 68 Iowa, 81, 90; *Clark v. Maurer*, 77 Iowa, 717, 720; *Thurston v. Arnold*, 43 Iowa, 43.

To our minds, this is a case which entitles the plaintiff to a decree of specific performance.   The judgment of the district court is AFFIRMED.