LITANY WEBB, Appellee, v. A. E. HANCHER, Appellant.

**Contract for sale of land:** TITLE. Where the defendant took an
1 assignment of plaintiff's contract for the sale of land, knowing that plaintiff had no title to the property, he was not entitled, on plaintiff's tender of performance, to demand a title emanating from his assignors.

**Rescission.** Where a vendor had no title to land at the time
2 fixed for performance of a contract of sale, the vendee or his assignee on a refusal of the vendor to perform is entitled to rescind the contract without making a tender of the purchase price.

| 127 | 269 |
| 127 | 220 |
| 127 | 221 |
| 127 | 563 |
| 127 | 269 |
| 132 | 386 |
| 127 | 269 |
| 134 | 388 |
| 127 | 269 |
| 141 | 405 |

**Procurement of title:** REASONABLE TIME. A vendor of land which 3 he did not own is not entitled to a reasonable time after the date for performance of the contract to procure title.

**Equity.** Where the equities between the parties are equal the 4 law will prevail.

*Appeal from Palo Alto District Court.*—HON. W. B. QUARTON, Judge.

SATURDAY, APRIL 8, 1905.

THIS is an action in equity to recover the contract price of certain real estate, and to establish and foreclose a vendor's lien thereon. The trial court rendered a personal judgment against the defendant, and decreed and foreclosed a vendor's lien upon the property. Defendant appeals.—*Reversed.*

*Healy Bros. & Kelleher,* for appellant.

*E. A. Morling* and *C. C. Delle,* for appellee.

DEEMER, J.—March 5, 1901, plaintiff entered into a contract for the sale of a part of the land in controversy to one Burgess. At that time he (Webb) did not have title to the property. He held a contract for the purchase of the land from one Reece, which provided for a conveyance from Reece to Webb on March 1, 1902. Reece held no title, but had a contract of purchase from one Aurner. The Reece-Aurner contract made time the essence of the contract, and provided for forfeiture on default of payment of the purchase price. The Webb-Burgess contract provided that Webb should furnish an abstract showing good and sufficient title vested in him (Webb) up to March 1, 1903, and that he should pay the 1902 taxes. This contract also contained the following provisions:

And it is further stipulated that no assignment of the premises shall be valid, unless the same shall be endorsed hereon, or permanently attached hereto, and countersigned

by all parties (for which purpose this contract must be sent to said parties of the first part by mail or otherwise) and that no agreements or conditions or relations between the said party of the second part and his assignees or any other person acquiring title or interest or through him shall preclude the said parties of the first part from the right to convey the said premises to said party of the second part or his assigns on surrender of this agreement, and the payment of the unpaid portion of the purchase money which may be due to the said parties of the first part.

The contract further provided that the payment of the balance of the consideration, $5,860, should be made on the 1st day of March, 1903, and:

In case the party of the second part, his legal representatives or assigns shall pay the several sums of money aforesaid punctually and at the several times above limited and shall strictly and literally perform all and singular his agreements and stipulations aforesaid according to their true tenor and intent, then the said parties of the first part, will make unto the said second party his heirs and assigns (upon the surrender of this contract) a deed for the said premises in fee simple, with the ordinary covenants of warranty.

In May of the year 1902 Burgess, purchaser under the Webb contract, made an assignment thereof to Jorgenson and Hall, which assignment read as follows:

For value received we hereby sell, assign and transfer and set over to F. E. Jorgensen and J. L. Hall of Pocahontas County and State of Iowa, this contract. It is expressly understood that in consenting to this assignment we do not exempt the original purchaser from any of his liabilities from any of the contract, but to protect the rights of the assignee provided he comply with its obligations, and under no circumstances whatever will any assignment of this contract be considered valid unless countersigned by party of the first part, for which purpose it must be sent within twenty days after such assignment.

In June, 1902, these assignees, Jorgenson and Hall, made a general blank assignment thereof. It was delivered,

however, to the defendant, Hancher; and Webb learned from Hancher some time in July or August, 1902, that he (Hancher) had procured the contract by assignment from Jorgenson and Hall. As to the other part of the land, Webb, the plaintiff, held a contract for the purchase thereof from one Underwood, and an unrecorded deed was secured thereunder. This deed and the contract were left with a bank at Rolfe, Iowa, as security for an indebtedness owing it by Webb. These papers were both with the bank on the 1st day of March, 1903, at which time Webb, by his contract, undertook to convey the land. The 1st day of March, 1903, fell on Sunday, and on February 28th of that year, and again on Monday, March 2d, defendant served upon Webb, and also upon Jorgenson and Hall, from whom he received the assignment of the contract, a written tender of the amount due on the Burgess contract, an averment of readiness to perform, and a demand that they, and each of them, perform their contracts. This was accompanied by an actual tender of the money due on the contract. As performance was not made on either day, defendant on March 4th served upon Jorgenson and Hall a written notice of the rescission of the contract made by him with them, and upon the same day served on plaintiff, Webb, a written notice of the rescission of the contract he (Webb) had made with Burgess. Neither on Saturday, February 28th, nor on Monday, March 2d, did plaintiff, Webb, have the legal title to the property, save as hereinafter stated. Two deeds from Aurner to Reece, and from Reece to Webb, were at those times still in the hands of the bank. Webb did, however, obtain the deeds from Aurner to Reece, and from Reece to him (Webb), about ten or eleven o'clock Monday night, March 2d, and he thereupon drove to the town of Emmetsburg; arriving at the latter place about six o'clock on the morning of March 3d. He thereupon hunted up the county recorder, and had the deeds recorded. The abstract showing these conveyances was not extended until Tuesday, March 3d. When this ab-

stract was extended, it showed conveyances of the eighty-acre tract from Aurner to Reece, and from Reece to Webb, and from Underwood to Webb, all recorded on March 3, 1903. On March 3, Webb tendered performance to Hancher, and delivered or tendered him an abstract showing all conveyances down to and including that date. On March 4th Jorgenson and Hall, their wives joining, conveyed the land covered by the Burgess contract to Webb by quitclaim deed, which deed was not recorded until March 6, 1903.

It further appears that defendant, Hancher, made his contract for the land with Jorgenson and Hall, paid them a certain cash payment, and gave a note for the balance due them on the assignment of the contract. The cash payment made to plaintiff under the Burgess contract was from him (Burgess), and defendant's rights and liabilities are bottomed on his assignment of the Burgess contract from Jorgenson and Hall. When defendant took this assignment, he supposed that Webb had the legal title to the land. Defendant never went into the possession of the property, and he made no claim upon the plaintiff for the $1,340 which he had paid to Jorgenson and Hall when he took the assignment of the contract from them. He expected to get title from them, as his contract was with them, and failing in that, he proposed to assert his claims against them. When defendant, Hancher, made his tenders to Webb, he (Webb) demanded that Hancher let him have the money tendered, so that he could procure his deed from Reece, and that Reece might thereby be enabled to pay Aurner, and for the further purpose of aiding him in paying the amount he (Webb) owed the bank; but this Hancher would not consent to do. Webb finally obtained the money with which to settle his obligations and to release the deeds from the bank through a loan made by his father, which was consummated about sundown on the evening of March 2, 1903, after defendant had made his tender and demand for performance; but the money was not actually paid to the holders of the deeds and contracts

until 11 o'clock in the evening of that day, and the abstract was not extended, nor were the deeds recorded, until March 3d. When Webb tendered the abstract and the deeds to defendant, Hancher, on the 3d of March, Hancher said the title was not according to contract, and refused to accept the papers and documents. On the 3d day of March, plaintiff served a written tender upon defendant, Hancher, of a deed from himself and wife to Hancher, and an abstract of title certified down to March 3d, showing the conveyances hitherto mentioned, and containing a demand for the balance of the purchase price. This was refused by Hancher. Thereupon, and on March 13th, this action was commenced.

Whatever else may be said of the case, it is apparent that plaintiff, Webb, did not have title to the land when he entered into the contract for its sale to Burgess, and that he 1. CONTRACT FOR SALE OF LAND: title. did not procure title until March 2d, and did not have the record title until March 3d. Until this last-named date the record title was in Aurner and Underwood. The deeds from Aurner to Reece, from Reece to Webb, and from Underwood to Webb, as well as the Burgess contract, were all left in the bank, not only for the purpose of protecting the grantors therein, in enabling them to secure the purchase price, but also to secure an indebtedness of plaintiff, Webb, to the bank. These deeds and the contract were not released until 11 o'clock, Monday evening, March 2d, after defendant had made his tender and demand for performance. Plaintiff could not have made a good conveyance to Hancher until he had secured the release of these deeds, and he did not, in fact, tender performance of his contract unconditionally until Tuesday, March 3d. True, he offered to take Hancher's money and secure the release of the deeds and contracts; but Hancher was not required to accede to this, and thus take chances on the title or on plaintiff's personal responsibility. Delivery of the deeds and payment of the purchase price were to be concurrent, and neither party could put the other in default

without tendering unconditional performance. Plaintiff could not insist on defendant's paying him the money in order that he might secure the title he had obligated himself to convey on a day certain. This is fundamental doctrine, requiring no citation of authority in its support. But it is said that as defendant had the abstract at one time, and made no objections thereto, and knew that plaintiff had no title, he waived all objections both to the abstract and to the title itself. It is true that, after defendant had taken an assignment of the contract from Jorgenson and Hall, he had the abstract, and knew that plaintiff had no title to the land; but it does not appear that he waived any defects in the title, or put himself in such a position that he could not insist upon strict compliance with the terms of the Burgess contract, which had come to him by the Jorgenson and Hall assignment. Plaintiff testified that defendant told him he should be ready " to clean up on the 1st day of March." When plaintiff finally made his tender of the abstract and deeds, on March 3d, defendant, among other things, objected because he was not getting title from his immediate vendors, Jorgenson and Hall. In view of the entire record, we think this claim is without merit. Defendant was relying upon his assignment of the Burgess contract, and in his written demand and tender he insisted upon the performance of that contract. He recognized Webb as his immediate vendor, and had no right to claim a deed from his immediate assignors Jorgenson and Hall. Indeed, if the case depended upon a defect in the abstract or in the title, we should be inclined to agree with the district court, and to hold that plaintiff, after receiving defendant's objections thereto, if he made any, would have a reasonable time to cure the defects. But the controlling principle upon which the case rests lies deeper than this.

Plaintiff had no title when he made his contract to sell the land to Burgess, nor did he procure it until late in the evening of March 2d, after defendant had demanded per-

formance and tendered the remainder of the purchase price. He was in no position to comply with his contract at the time . fixed for performance, and was not entitled to defendant's money, with which to place himself in a position to perform. But plaintiff insists that defendant, by his acts, conduct, and agreements, waived strict compliance with the terms of the contract, and is now estopped from relying thereon. The testimony does not sufficiently establish this claim. True, there were some negotiations and agreements looking to the borrowing of money on the land in the name of the defendant to fix up the title, and to enable Webb to pay out on one of his contracts; but this was abandoned by both parties long before the 1st of March, 1903, and defendant then notified plaintiff that he should be ready to comply with his part of the agreement on the 1st day of March, according to the contract. If there be any waiver or abandonment in the case, the evidence more nearly establishes one on plaintiff's part, for the testimony shows that he frequently asserted that he would not put any more money into the land, and we are constrained to hold that the whole transaction on his part was purely speculative.

We are now brought down to the pivotal point in the case. Neither at the time plaintiff entered into the contract, nor at the time he agreed to perform, did he have any title to the land he contracted to sell. He merely held contracts whereby he might obtain the . title, provided his vendors would perform their agreements. He was therefore not in a position to carry out the terms of his contract with Burgess or his assignee; and defendant, upon making tender and demand for performance, which was not accepted or acceded to, was entitled to rescind. *Primm v. Wise & Stern,* 126 Iowa, 528. Indeed, under our decisions, he was not required to make a tender. Demand alone was sufficient. See the Primm Case, *supra,* and cases therein cited. Plaintiff was not, under the decision in that

2. RESCISSION.

3. PROCUREMENT OF TITLE: reasonable time.

case, entitled to a reasonable time within which to procure title as his counsel contends. He should have been ready on the day fixed to make performance on his part. The case differs materially from those where plaintiff has title, but there is some defect in the abstract, which may be cured so as to show the fact. The reason for the rule which must govern this case seems to be that there is no mutuality in the contract if the vendor has no title when the time arrives for performance. In such cases the transaction is purely speculative, and compliance with the terms of the contract impossible. Having no title, he could not compel the purchaser to pay, nor could the purchaser in this case have exacted specific performance, for it did not lie in the power of the vendor to comply with his agreement. But plaintiff's counsel argues that, while this may be the rule with reference to actions for specific performance, it does not apply to this case, and cites in support of his contention *Stevenson v. Polk,* 71 Iowa, 278. But in that case plaintiff had both a record and a presumptive title growing out of possession (the record title being defective, it is true) ; and the defendant had not rescinded, nor had he the right to rescind. On these grounds, that decision is readily distinguishable from this one. *Armstrong v. Breen,* 101 Iowa, 9, relied upon by appellee, is really an authority for appellant, as a careful reading will show. Indeed, none of the cases cited and relied·upon by appellee seem to be in point. The case is clearly ruled by the Primm Case, *supra,* which, in fairness to the trial court, it should be stated, was decided long after this case was submitted to the court below.

Our conclusion that plaintiff is not entitled to recover finds support in the following cases: *Martin v. Roberts,* 127 Iowa, 218; *Luse v. Deitz,* 46 Iowa, 205; *Hawes v. Swanzey,* 123 Iowa, 53; *Ormsby v. Graham,* 123 Iowa, 202; *McGuire v. Blanchard,* 107 Iowa, 490; *Thurston v. Arnold,* 43 Iowa, 43; *University v. Polk,* 87 Iowa, 50; *Iowa Co. v. Mickel,* 41 Iowa, 402; *Henderson v. Beatty,* 124 Iowa, 163:

It is doubtless true that defendant was anxious to rue

his bargain, and is seeking to escape liability under his contract by taking advantage of every technicality; but it is likewise true that plaintiff is just as anxious to hold defendant to his contract, to collect the purchase price, and to advantage himself of a purely speculative transaction. In such cases the equities, to say the least, are equal, and the law will prevail.

4. EQUITY.

The trial court was in error in rendering judgment for the plaintiff, and its decree must be, and it is, *reversed.*