Smith v. Shepherd.

SMITH v. SHEPHERD *et al.*

36 253
96 590

36 253
122 202

36 253
f143 70

1. **Equity**: SPECIFIC PERFORMANCE. Courts of equity will not decree a specific performance of every legal contract, but only in those cases where it would be strictly equitable to make such decree.

2. —— Under the facts of the present case a decree for specific performance was denied.

*Appeal from Lee District Court.*

THURSDAY, MARCH 20.

ACTION in equity to enforce a specific performance of a contract for the conveyance of real estate. Plaintiff's petition dismissed. Plaintiff appeals.

The necessary facts are stated in the opinion.

*Gillmore & Anderson* for the appellant.

*J. M. Casey & M. B. Davis* and *Halls & Baldwin* for the appellee.

DAY, J.— We deem it necessary to consider only the following question, viz.: Is the contract in question so fair, just and reasonable in all its parts that a court of equity will interpose to decree a specific performance thereof?

The exercise of the branch of equity jurisprudence respecting the specific performance of contracts is not a matter of right in either party. It is a matter of sound and reasonable discretion in the court, governing itself as far as practicable

by general rules and principles, but at the same time withholding or granting relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties.

Courts of equity will not interfere to decree a specific performance, except in cases where it would be strictly equitable to make such a decree. It is not the doctrine of courts of equity to carry into specific execution every contract, in all cases, where that is found to be the legal intention and effect of the contract between the parties.

Specific performance will not be decreed if there is inequality and hardship in the contract, as against the defendant; or there be good reason to doubt if the defendant entered into it understandingly, or whether he might not have been suffering some degree of obscuration of clear perception by reason of intoxication. In such cases a court of equity simply refuses to interfere, leaving the plaintiff to proceed at law for any redress by way of damages to which he may be entitled. Story's Eq. Jur. (10th ed.), vol. 1, §§ 742, 750, 750a, 769, 770, 778b, and cases cited; *Young* v. *Daniels*, 2 Iowa, 126; *Rudolph* v. *Covell*, 5 id. 525; *Auter* v. *Miller*, 18 id. 405.

We proceed to apply these elementary principles to the facts of this case. A part of the consideration for the defendant's agreement to convey the lands in controversy, was one hundred and sixty acres of land in Cass county.

This land was in the hands of F. H. Whitney, a land agent, from October, 1869, until June, 1870, with authority to sell it at $4 per acre, exclusive of charges for sale.

In November, 1870, plaintiff purchased the same from the owner, H. Burnell, for $550, a little less than $3.50 per 'acre, paying $45 thereon some time after the contract for purchase was made, and obtaining time upon the balance.

On the 7th of March, 1871, he obtained his deed therefor, and executed his note for $80, remaining unpaid of the purchase-money. This deed was filed for record on the 10th day of March, 1871.

Plaintiff, prior to the trade with defendant, was negotiating

a trade with Isaac Kelly for this land, and referred him for information respecting it to John Hoply, of Cass county. Plaintiff thereupon wrote to Hoply, that Kelly might write to him for information about the land, and if he did he need not state that he knew any thing about the land, but that land in Cass county was rating at $10 to $15 per acre. In this letter he stated also that if he could trade with Kelly he would make a good thing of it. Kelly did write to Hoply respecting the land, and was informed that the land was good and in good location. That land had been selling in the county at from $10 to $15 per acre, and he would not think this land out of the way at $12 per acre. Plaintiff offered the land to Kelly at $6.25 per acre, at which price Kelly was willing to take it, but plaintiff would not close the contract until he could see defendant, stating that he had been talking with him about a trade. On the 17th of February, 1871, plaintiff traded this land to defendant at $12 per acre, in part consideration of the lands now in dispute, the parties mutually executing bonds for the completion of the contract on the 10th day of March following.

Before completing the agreement for the exchange the defendant drank intoxicating liquor several times, and was, to a very considerable degree, under its influence. Defendant had been informed by William Elder, of the contents of the letter of Hoply to Kelly.

During the negotiations plaintiff did not make any representations as to the value of the land, but he several times referred to the letter which Hoply had written to Kelly, and said Hoply had stated the land was worth $12 an acre.

No reasonable construction can be placed upon the evidence which will fix the value of this land higher than $8 per acre. Whitney, who was a land agent, and had the best opportunities of knowing its value, testifies that it was not worth more than $4 an acre at the time it was traded to defendant. From the fact that it was in the market more than a year at $4 an acre, without securing a purchaser, and was afterward, less than four months before the trade to defendant, sold to

the plaintiff on time, for less than $3.50 an acre, we are inclined to think that the estimate of Whitney is nearest the truth.

We are satisfied from the testimony, that plaintiff knew he was disposing of the land at much more than its real value. While he made no direct representations as to its value, he referred to the statements of Hopley, and thus produced a stronger impression upon defendant's mind than if he had represented its value himself. Refusing to make any statements of his own, and referring to those of a third person, supposed to be honest and disinterested, he assumed an air of sincerity and fairness which were the best calculated to enable him to perpetrate and conceal a fraud. From the whole transaction the conviction forces itself upon us that he sought to mislead the defendant in such a way as not to render himself liable. Equity ought not to interpose to enable a party to avail himself of advantages thus obtained. Applying the principles above set forth, which govern courts of equity in applications for the specific performance of contracts, we have no doubt that the plaintiff's petition was rightly dismissed in the court below.

It is claimed that defendant, after seeing the Cass county lands and learning their value, expressed his intention to carry out the contract, and thus ratified it. The testimony is quite conflicting as to what occurred after defendant returned from Cass county. If, however, it should be conceded that defendant expressed his intention to carry out the agreement, as appellant's witnesses testify, his conduct is susceptible of reasonable explanation without imputing to him a deliberate intention to ratify the contract. At the time he went to see the land plaintiff had no deed therefor. His deed was acknowledged on the 7th of March and filed for record on the 10th, the very day fixed for the consummation of the trade by the exchange of deeds. G. M. Andrews, a witness of plaintiff, speaks of a conversation he had with defendant after his return from Cass county, as follows: "He said he had been out west, and that he didn't know what land Smith did have out there, but knew

what he didn't have. I inferred from what he said that he did not believe Smith owned the land he had traded to Shepherd." This furnishes the clue to defendant's subsequent conduct, if he did, as stated, express his intention to carry out the contract. He did not believe Smith owned the land. Hence he expected to relieve himself from the humiliation of a repudiation of his agreement by the inability of Smith to perform the contract upon his part.

And, while this duplicity does not commend him to the favor of a court of equity, still it does not entitle the plaintiff, in such court, to enforce a contract unjust and unconscionable in its terms, and procured through concealment and misrepresentation.

Affirmed.