MOETZEL & MUTTERA, Appellees, v. SIMON KOCH, Appellant.

Sale of Land: SPECIFIC PERFORMANCE: VALIDITY OF CONTRACT: EVIDENCE. In an action for the specific performance of a contract for the sale of land, the evidence is considered and held to show that the vendor was so intoxicated at the time of making the alleged contract as to be unable to give intelligent assent thereto, and that the same was unfair and should not be enforced at the suit of vendees.

*Appeal from Scott District Court.*—HON. JAMES W. BOLLINGER, Judge.

° SATURDAY, JANUARY 16, 1904.

ACTION in equity for specific enforcement of an alleged oral contract for the sale of real estate. Decree for plaintiffs, and defendant appeals.—*Reversed.*

*Waldo Becker, E. M. Sharon* and *Lane & Waterman* for appellant.

*Lischer, Bawden & Neal* for appellees.

WEAVER, J.—The evidence tends to show that in the forenoon of April 7, 1902, a member of the plaintiff firm and defendant met in a saloon in the city of Davenport, where, with the assistance of one Carroll, a real estate agent, and others gathered about the same table, a verbal agreement was entered into by which defendant was to convey to the plaintiffs a certain improved lot in said city at the price of $25,000, of which sum $5,000 was to be paid in cash on the execution of the papers, and the remainder, with interest at five per cent., to be secured by mortgage upon the property, payable in five or ten years, at plaintiffs' option.    Upon reaching the agreement as to the terms of the transaction, there was paid by plaintiffs to defendant, it is claimed, the sum of $500, in part satisfaction of the cash installment.    The defendant denies entering into the agreement or receiving any part of the alleged price of the property, and further attempts to show that at the time of the alleged sale he was badly intoxicated, and had no adequate or reasonable comprehension of the nature of the transaction.    It is on the question of fact involved in this claim that the determination of this case depends.    We have given the case that careful attention which its importance demands, and are strongly of the opinion that specific performance should have been denied. It is true, there is a marked conflict in the testimony as to defendant's condition at the time of the transaction in question, but we are forced to the conclusion that plaintiffs have failed to make a case calling for equitable interference in their behalf.    Without going into a minute review of the testimony, we may say that the plaintiff Muttera and the witnesses Lischer, Carroll, Koester, and Lindt, all of whom were present when the alleged deal was made, unite in saying that they thought defendant sober.    It is significant, however, that Lindt, the only one of these five persons who did not take an active hand in

the affair in plaintiffs' interest, admits that Koch was visibly under the influence of liquor, but thinks he knew what he was doing. Other witnesses testify to alleged conversations with defendant on the following day and at other times tending to show that he understood and recognized such contract.

On the other hand, it is made quite clear that defendant was addicted to the excessive use of intoxicants, and was in the habit of rising very early in the morning and making the round of numerous saloons, sampling the wares there dispensed. His wife swears that at this time her husband had been upon a prolonged debauch, and in this she is strongly corroborated. She says that he was in the habit of "getting up in the night and drinking," and during the night of April 6th he drank more or less, and was "full" in the morning. He himself says that he had "perhaps a pint or so" before leaving home. It is shown by others that he early made the round of several saloons, and was intoxicated at half past seven that forenoon. About eight o'clock he was met by Carroll, and some talk ensued about the sale of the property. Nothing definite was arrived at, and they separated; the defendant going to Abel's saloon, where the deal was afterward made, and Carroll going to the plaintiff's place of business. In a short time Carroll sought defendant and found him sitting at a table in a back room at Abel's. Of his condition at that time Abel testifies that, in his opinion, Koch was drunk, and, to his knowledge, had been in that condition for three weeks. Two other witnesses who saw him there say that he sat at the table with his head bent over in drunken stupor, and they heard him say: "I don't want to sell my property. I want to see my wife first"—and mumbled something else, which was not understood. It should be said, perhaps, that the testimony of the last three witnesses mentioned is in form of affidavits filed in support of motion for leave to introduce additional evi-

dence after the parties had rested, which affidavits, as we understand the record, were treated and considered by the trial court as testimony given upon the trial. Were this all, while we should have much doubt of the justice of plaintiffs' demand, we should hesitate about interfering with the decision of the trial court, which had the parties and witnesses personally before it. There are, however, several circumstances admittedly or inferentially shown by the record which go far to strengthen the position of the defendant. It is quite clear that defendant was reluctant to sell, and it was only by the combined importunties of Muttera, Carroll, and Koester that he was induced to receive the money. Muttera, as purchaser, and Carroll, as agent desiring commissions, had a direct interest in pressing the matter to a consummation, while Koester acted the part of disinterested friend of defendant for the benefit of the plaintiffs. Lischer, who is an attorney, is not shown to have joined in the persuasions of defendant to sell, but seems to have been employed on the spot by plaintiffs to look after their interests, and made a written memorandum of the terms of the sale. After Carroll had followed defendant to Abel's saloon, and obtained, as he claims, the terms upon which defendant would sell, he returned again to plaintiffs, when Muttera obtained $500 in cash, and together they went to Abel's, and once more broached the subject of the proposed deal. While there is some conflict in the testimony upon this point, we think it fairly shown that, when the terms of the sale were inquired about, defendant did not undertake to state them for himself, but Carroll stated them, and obtained, it is claimed, some sort of assent thereto from the defendant. Muttera then produced the $500, and defendant hesitated or refused to take it, saying that he would have to change his will, and would have trouble with his wife, whereupon Koester took the money and counted it for him. Then, as plaintiffs' witness says,

Koch "had the money lying in front of him, and he commenced to waver, as though he wanted to back out"; and at this juncture Koester again came to the rescue, telling him it would be a disgrace for him to back out, assured him he was getting a good bargain, and advised him to complete the sale. This argument seems to have proved effective, and (defendant having taken the money) Koester adds: "Then we all set them up, and took a drink. I think we must have drank seven or eight rounds after the sale was sanctioned." It farther appears that at this point, defendant having spoken of going to plaintiffs' saloon to "spend some money with the boys," Koester interfered, and suggested that he take the $500 across the street and deposit it; and, upon defendant's refusal so to do, Koester himself took the money to the bank, and brought the certificate back to the defendant. Notwithstanding the seven or eight drinks just taken by defendant, in addition to numerous other potations indulged in that morning, Koester solemnly assures us Koch was still "as sober as a judge," and perfectly competent to do business; and yet, in spite of this extraordinary demonstration of Koch's judicial equilibrium, his friend thought it wise to assume this unusual measure of guardianship for the protection of one whose abundant capacity to protect himself he repeatedly and emphatically affirms. The contract itself is not without a bearing upon the fact here under inquiry. Plaintiffs insist that the property is worth not to exceed $20,000, yet say that defendant was to permit $20,000 of the purchase price to be deferred for ten years with interest at five per cent. This interest is treated in argument as payable annually, but we fail to find anything in the alleged contract or in the decree of the district court which would enable defendant to enforce collection of interest till the end of the ten-year period. The financial responsibility of plaintiffs·was not such as to materially aid the defendant's security. A very material

part of the value of the property is in the building constructed upon it, yet there was no stipulation or.agreement to keep it insured for the benefit of the mortgage; the order by the district court to that effect having no basis in the contract pleaded or proved.

As an entirety the contract was a reckless and improvident one on defendant's part, and, while that fact may not be sufficient to justify us in holding it invalid, it has some tendency to corroborate the claim that Koch, normally a person of some business capacity, was not entirely himself when he agreed to its terms. That he was intoxicated to some degree, at least, when the contract was made, is hardly open to doubt. When the evidence is carefully read, we find no witness present on that occasion who undertakes to say that defendant was not more or less under the influence of liquor; and the chief difference between the witnesses appears to be upon the abstract question as to the degree of inebriety which must exist before a man can be said to be drunk or incapacitated for business. The very fact that, with the parties all living in the same city, and having their own respective places of business, plaintiffs should deem it necessary, on receiving word from Carroll, to take the $500 and hasten to the saloon where defendant was to be found; that Carroll, and not defendant, should have been the man to state the terms of the sale; that Koester, and not defendant, should count the money; that plaintiffs at this juncture should have taken the precaution to engage counsel to protect interests not then threatened by any dispute; that Koester should have taken the reluctant and wavering defendant in hand, and, by rebuke, argument, and persuasion, brace him up to the point of taking possession of the money lying before him, and should then persuade him to return it, in order that it might be deposited in the bank, and not squandered in a drunken debauch—these things, with others tending in the same direction, are so unusual, if

not so inconsistent with the ordinary course of legitimate business, that, when added to the direct testimony bearing upon defendant's condition, we are convinced he did not and could not give intelligent assent to the agreement now sought to be enforced. At any rate, the equity of plaintiffs' claim is not so clear, nor is the contract itself so manifestly fair and just, that specific performance will be decreed. It is an elementary proposition that the enforcement of specific performance is not a matter of right, but rests in the sound discretion of the chancellor. It may easily happen that circumstances which will not justify the setting aside of a contract may yet be ample grounds for refusing to order its specific enforcement. It is enough if, in the judgment of the court, the result of such enforcement will tend to injustice or oppression, or to the triumph of fraud or imposition. The contract must not only be fairly procured, but fair in itself. Story's Equity Jurisprudence, sections 750-769; *Rust v. Conrad,* 47 Mich. 449 (11 N. W. Rep. 265); *Harper v. Sexton,* 22 Iowa, 443; *Smith v. Shepherd,* 36 Iowa, 253; *Clark v. Maurer,* 77 Iowa, 717. Applying this test, we are abidingly satisfied that plaintiffs are not entitled to specific performance.

It is urged by appellees that, whatever may have been the merits of the case originally, defendant should be held to have ratified the contract. We have examined the record bearing upon this proposition, and believe it sufficiently appears that defendant tendered back the $500 and repudiated the alleged agreement, within a reasonable time after he became sufficiently sober to intelligently transact business, and learned of the nature of the transaction in which it was claimed that he had taken part. We think there was no ratification.

It follows that the decree of the district court must be reversed, and the plaintiffs' bill dismissed.—Reversed.