J. P. MATHEWS, Guardian of the Estate of Viola S. Mathews, v. BERT E. NASH and others, Appellants.

**Contracts:** MENTAL INCAPACITY: EVIDENCE. To set aside a contract on the ground of mental incapacity it must be satisfactorily shown that the party was incapable of transacting the particular business in question; and if delusions are relied upon it must appear that they influenced the party to such an extent that he had no reasonable conception or understanding of the nature and terms of the contract.

In this action the evidence is held to show that the wife was induced to make the contract by insane delusions as to her husband's disposition of her property and his attitude toward her.

**Same:** INSANE PERSONS: EXECUTED CONTRACT. Fully executed contracts of an insane person that are fair and reasonable will be upheld; but the mere payment of part of the purchase price and the execution of notes for the balance, does not render the contract executed in such sense that the rule is applicable. In this case it is also held that the contract is unfair and unreasonable.

*Appeal from Pottawattamie District Court.*—HON. E. B. WOODRUFF, Judge.

FRIDAY, APRIL 7, 1911.

SUIT in equity to set aside a land contract. Judgment for the plaintiff. The defendants appeal. *Affirmed.*

*S. B. Wadsworth, A. W. Askwith* and *Sullivan & Sullivan,* for appellants.

*H. L. Robertson,* for appellee.

SHERWIN, C. J.—In July, 1907, Viola S. Mathews, the plaintiff's ward, entered into a written contract with the defendant, Bert E. Nash, by the terms of which she agreed to purchase of Nash three hundred and twenty acres of land situated in Dallam county, Texas, and to pay therefor the sum of $4,800. She paid $700 in cash when she executed the contract and gave her notes for the remainder of the agreed purchase price. Mrs. Mathews afterwards paid several of the notes she had thus given. In January, 1909, the district court found that Mrs. Mathews was of unsound mind and appointed the plaintiff, who is her son, the guardian of her property. In March, 1909, the board of insane commissioners of Pottawattamie county also adjudged her an insane person, and committed her to the insane hospital at Clarinda, where she has since remained with the exception of a few months in 1910, during which time her family undertook to care for her at home. She was ordered back to the hospital, however, by its superintendent and is there now. This action was brought to set aside the contract for the purchase of the Texas land and to recover the amount already paid thereon. The plaintiff alleged that Viola S. Mathews was of unsound mind and incapable of contracting, and that she was induced to enter into the contract by the fraud and false representations of the defendant.

No serious legal propositions are involved in the consideration of this appeal. It is conceded that the burden rests on the plaintiff to establish the fact that Mrs. Mathews was mentally incapable of executing the contract. The legal propositions incident to this main one are also practically conceded.

1. CONTRACTS: mental incapacity: evidence.

The ground on which the plaintiff bases his claim of incapacity is that his ward was the subject of insane delusions which influenced her actions and induced her to make the contract.

It is well settled by the decisions of this court, as well as by the decisions elsewhere, that to avoid a contract on the ground of mental incapacity it must be satisfactorily shown that the party was incapable of transacting the particular business in question. If delusions be relied upon, it must be shown that they influenced the party to such an extent that he had no reasonable conception or understanding of the true nature and terms of the contract. *Swartwood v. Chance,* 131 Iowa, 714; *Reese v. Shutte,* 133 Iowa, 681. The facts are controlling, and we go to their consideration without further discussion of the law.

The plaintiff's ward was married to J. B. Mathews in 1875, when she was a young woman, and they lived together until she was sent to the hospital. Three children were born to them, two sons and a daughter. The oldest son died in 1901. The plaintiff, the surviving son, is now about thirty-two years of age. The only daughter is now about twenty-one years old. After their marriage the plaintiff's father and mother began farming in Pottawattamie county and followed that occupation most of the time thereafter. They went to Colorado in 1897, where they remained a few years, and then returned to Washington township, in Pottawattamie county. The plaintiff's ward inherited one hundred and sixty acres of land situated in said township, worth at the time of the trial about $20,000 and with no incumbrance thereon. The father owned four hundred and thirty-five acres of land near that of his wife. Mr. and Mrs. Mathews were intelligent and educated people, both having been public school teachers before their marriage. While the family was living in Colorado, Mrs. Mathews gave her husband a power of

attorney to collect the rent from the tenants of her Iowa farm, and it was after that that she became the subject of delusions relative to her husband. These delusions began more than a year before the contract in question was executed and continued, becoming all of the time more intense, until shortly before she was sent to the hospital at Clarinda. The death of her son affected her deeply, and before and at the time she made the contract in question she believed that her husband had killed him, though he died from the effect of a surgical operation. She thought that her husband had sold and conveyed her farm, under the power of attorney that she had given him while in Colorado, and had the proceeds of such sale in his possession, with the intention of depriving her thereof. She believed that her husband intended to sell all of his property, get the money therefor, and then abandon her and their children and leave them destitute. She firmly believed that her husband had no love for her, but was in love with another woman; that he had her life insured for the benefit of this other woman and himself, and that he had attempted to poison her and thus get her out of the way. She knew that he was scheming to get all of her property, and to then get rid of her by divorce or otherwise. So certain was Mrs. Mathews of the truth of all of these things that she consulted several attorneys about them, and tried to institute legal proceedings to prevent her husband from carrying out his plans. She also advised some of her closest friends and her children of her troubles, but neither children, friends, nor lawyers could convince her that her fears were entirely groundless, yet they were. Mr. Mathews had always been a loving, true, kind, and indulgent husband. There was not the least shadow of foundation for any of the suspicions she entertained.

Such was her mental attitude toward her husband when one of the defendant's agents visited their home, for

the purpose of inducing Mr. Mathews to accompany the defendant to Texas in his private car, with the hope that he would purchase land there.    Mr. Mathews did not want to go to Texas for any purpose, but the plaintiff's ward wanted to make the trip, and yielding to her wishes and solicitations, Mr. Mathews consented to go, and they went.    They were there shown lands, in a general way, which the defendant claimed to own, and on the way back to Iowa, and in the defendant's private room in his car, Mrs. Mathews was induced to enter into the contract in question.    Mr. Mathews positively refused to purchase and did all that he could to prevent his wife from making the contract.    The defendant heard Mathews trying to induce Mrs. Mathews not to make the contract and objected to such action on Mathews' part, and then did everything in his power to secure the contract.    The evidence fairly shows that the land contracted for had no real value at the time, except for sale to extremely credulous nonresidents, who personally knew nothing about the quality of the soil, the climate, or value.    The evidence is also practically conclusive that the defendant made false and fraudulent representations as to the quality and value of the land.    The land was shown to prospective purchasers in such a way that they could not form any just estimate of either quality or value.    It was wild and surrounded by wildness, generally speaking.    The defendant's guests, if so they may be designated, were not permitted to stray far enough from him to gain any outside information. Indeed, at this particular point there was no one of whom inquiry could have been made, so far as the record shows.

But we need not go into further details of the transaction, for this opinion is already too long for a purely fact case.    It is enough to say that we are convinced that Mrs. Mathews entered into the contract in question because she thought that her husband had sold her Iowa farm and appropriated the proceeds thereof, and that she was then

without any land of her own. She further believed that by investing what money she had and might get in the future in this Texas land, she was placing it beyond the reach of her husband, and thus saving it for herself and the children. The very fact that Mr. Mathews opposed her purchase was the very best reason, in her judgment, why she should make it. The insane delusions to which we have referred clearly influenced her action, and hence the contract is not binding upon her. *Seerley v. Sater,* 68, Iowa, 376, and cases, *supra.*

The appellant says that the plaintiff should have no relief because of the rule that executed contracts made in the ordinary course of business, which are fair and reasonable, will be upheld when it appears that the mental incapacity was not known and the other party can not be placed in *statu quo.* The rule is not applicable here. The contract is not yet executed. *Keokuk v. Electric Co.,* 90 Iowa, 67. Nor is it fair and reasonable. The defendant knew at that time that Mrs. Mathews was thought to be insane, and the defendant can be placed in *statu quo.* The trial court rightly decided this case, both on the issues presented by the plaintiff and by the defendant's counterclaim. The judgment is therefore *affirmed.*

2. SAME: insane persons: executed contracts.

