JAMES F. GRIFFIN, Appellant, v. C. G. NASH et al., Appellees.

**SPECIFIC PERFORMANCE:** Contracts Enforcible—Unjust or Inequitable Contracts. Specific performance of a contract is seldom a matter of right, and should not be granted in aid of a party seeking to enforce an unjust or inequitable contract.

**SPECIFIC PERFORMANCE:** Enforcible Contracts—Sufficiency of Evidence. Evidence reviewed, in an action to compel specific performance of a contract to convey land in part for a bankrupt stock of goods, and held not sufficient to entitle plaintiff, as a matter of right, to such relief, but that he should be left to his remedy at law.

*Appeal from O'Brien District Court.*—C. C. BRADLEY, Judge.

OCTOBER 16, 1919.

SUIT in equity, to compel the specific performance of a

contract to convey real property. The facts are stated in the opinion. The court below dismissed plaintiff's petition, without prejudice to his right to commence a suit for damages, and plaintiff appeals.—*Affirmed.*

*T. E. Diamond,* for appellant.

*S. D. Riniker,* for appellees.

PER CURIAM.—On May 10, 1916, plaintiff was the owner of two bankrupt stocks of merchandise, and on said date, entered into a contract in writing with the defendant Nash, by the terms of which he agreed to deliver the same at any station designated by Nash, in consideration of a conveyance to him of certain residence property in the city of Sheldon, Iowa. The contract also provided for the payment to defendant of $600 in cash, upon delivery of the deed. A deed was executed by the defendants William and Bertha Meiers, conveying the residence property to plaintiff, in accordance with the contract between plaintiff and Nash, and placed in escrow in the Sheldon Savings Bank. A pretended invoice of the merchandise was delivered to defendant at the time the contract was entered into. Later, the goods were shipped by The Eastern American Merchandise Company, from St. Louis, Missouri, and arrived at Sheldon in two separate shipments, and were immediately placed by Nash in a building which he had leased for the purpose of selling goods at retail. The invoice called for clothing, gents' furnishings, dry goods, groceries, and jewelry. Immediately after the goods were removed to the building at Sheldon, plaintiff and defendant attempted to check them with the invoice; but before the task was completed, plaintiff withdrew, and the agent who had acted for plaintiff in the sale took his place. The groceries were found short, but in apparently fair condition; but the remainder of the stock included a considerable quantity of

faded, dirty, shelfworn, or out-of-date stuff, much of which was unsalable. Before the invoice was completed, plaintiff's representative withdrew, and defendant made no further attempt to check the goods with the invoice. On Monday following, defendant told plaintiff that he could not accept the goods, and offered him the key to the building in which he had placed them. Plaintiff refused to take the key, and defendant left it at the Savings Bank. Later, the salable portion of the stock was sold, under a landlord's attachment against the defendant Nash, for the rent of the store building. Defendant paid freight and drayage to the amount of $47.48, for which he interposed a counterclaim. The court dismissed the claims of both parties, without prejudice to the right to pursue any remedy available to either at law. Defendant had handled two or three bankrupt stocks before the contract was executed, but neither party ever saw the merchandise in question until it was removed from the boxes at Sheldon. So far as the record discloses, plaintiff made no representation as to the quality or character of the goods, except that they were part of two bankrupt stocks, and there was no express warranty that same was merchantable, and no plea of fraud. Plaintiff testified that the residence property was worth from $2,500 to $2,600, and the evidence quite satisfactorily shows that the salable portion of the merchandise delivered by him at Sheldon was worth from $700 to $800. Two local merchants, examined on behalf of the defendant, testified that they examined the stock for the purpose of appraisement under the attachment, and that there was from $300 to $400 worth of salable goods, and that the rest was "junk."

There is, of course, more or less conflict in the evidence, but it appears from the greater weight thereof that not all of the merchandise covered by the invoice was de-

livered, and that much of it was in bad condition, and practically without value. Counsel for appellant properly contends that specific performance of a contract to convey real estate should not be arbitrarily denied by the court, but only in the exercise of a sound, judicial discretion, in harmony with established principles and rules of equity. Specific performance of a contract is seldom a matter of right, and should not be granted in aid of a party seeking to enforce an unjust or inequitable contract. *Smith v. Shepherd,* 36 Iowa 253; *Auter v. Miller,* 18 Iowa 405, 412.

**1. SPECIFIC PERFORMANCE: contracts enforcible: unjust or inequitable contracts.**

Some contention is made by counsel that the goods were delivered to and accepted by the defendant, that he has converted a portion thereof to his own use, and permitted a large part thereof to be sold under a landlord's writ of attachment for rent, and has, therefore, placed it beyond his power to restore plaintiff to his former condition with reference to the goods. No conversion of any part of the goods is shown. Defendant did, however, immediately upon learning the condition of the goods, and that only a portion thereof had been delivered, inform plaintiff that he would not accept them, and offered him the key to the building in which they were stored. At the time the goods were placed in the store building, neither plaintiff nor defendant had ever seen them, and the court cannot well say that defendant was bound to accept goods, no matter what their value or condition was found to be. Plaintiff also agreed to pay defendant $600 in cash, as a part of the consideration for the contract. This was never tendered to defendant, although plaintiff says he was, at all times, ready and willing to pay it, upon delivery of the deed. There was also an effort made by the parties, at one time, to arbitrate their differences. This, however, does not ap-

**2. SPECIFIC PERFORMANCE: enforcible contracts: sufficiency of evidence.**

pear to have been carried out by them. An extended discussion of the evidence will serve no good purpose. We are convinced, from a careful reading of the record, that, under familiar rules of equity, the court below, in the exercise of a sound discretion, properly refused the prayer of plaintiff's petition. The decree fully protects plaintiff, should he desire to bring an action at law. The finding and decree of the court below is, therefore,—*Affirmed*.