G. W. DUNLOP, Appellant, v. DANA WEVER et al., Appellees.

No. 39659.

JANUARY 14, 1930.

*Howard & Richardson, S. J. Sayers,* and *Wilson & Harris,* for appellant.

*C. S. White* and *Swan, Martin & Martin,* for appellees.

KINDIG, J.—Generally speaking, two questions are presented in this case: First, Is the plaintiff-appellant entitled to the specific performance of the contract between himself and the defendants-appellees? And second, Can the latter rescind that agreement?

The preliminary facts will aid in more fully understanding each interrogatory. Two farms are involved: one is located in Guthrie County, and the other in Audubon County. At the time of the transaction culminating in the contract aforesaid, the appellant owned the Guthrie County land, while the Audubon County real estate belonged to the appellees. Appellant's farm contained approximately 314 acres, but appellees' realty was a tract including about 120 acres. While there was this difference in acreage, yet appellees' premises were free and clear of incumbrance, and appellant's property was subject to a $40,800 mortgage. Certain real estate agents induced appellees to become interested in exchanging the Audubon County farm for other land. So, after some negotiations, the appellees were persuaded to enter into a contract with appellant, on September 18, 1926, under the terms of which the parties agreed that the latter should convey his Guthrie County farm to the former, in exchange for their Audubon County acreage. A supplemental agreement was executed by the interested parties on October 25, 1926, wherein the original undertaking was somewhat modified and changed.

Feeling that appellant's land was not as represented, and that it was much less valuable than he pretended, appellees refused to convey their Audubon County premises therefor. Consequently, appellant commenced the present action for specific performance, and appellees, by way of answer, asked that they be permitted to rescind the contract. Both prayers for relief were denied. Hence, we are confronted with two appeals.

I. For convenience's sake, consideration will first be given to appellees' appeal. The merits thereof cannot be considered, however, until disposition has been made of appellant's motion to dismiss.

It appears that appellant first appealed. Therefore, he filed an abstract of record in this court. Before doing so, however, he obtained additional time; but appellees filed no abstract, nor  did the additional time aforesaid expressly apply to their part of the appeal. Neither did appellees attempt, within the statutory period, to adopt appellant's abstract as their own. Because appellees did not file an abstract of any kind, appellant insists that they have no record before the court for consideration. Stating the thought in an-

other way, appellant contends it is incumbent upon appellees, as well as upon him, to file an abstract of the record. Two abstracts would be required, under that theory.

Solution of the problem may be made by studying the history, as well as the context, of the statutes relating to this subject-matter and the court rules adopted thereunder. Section 4118 of the 1897 Code contained the following authorization:

"Printed abstracts of the record shall be filed in accordance with rules established by the Supreme Court * * *."

Under that legislation, Rule 15 (Rule 20, Code of 1897) was adopted by this court. That rule defined an appellant, for the purposes of the cross-appeal, by using the following language:

"In case of cross-appeals, the party first giving notice of appeal shall, under this rule, be considered the appellant."

But since the 1897 Code, the section aforesaid has been amended, and now the legislature has declared, as shown by the 1927 Code:

"12845. Printed abstracts of the record shall be filed by the appellant in the office of the clerk of the Supreme Court."

"12847. An abstract must be filed within 120 days after the appeal is taken and perfected, unless further time is given before the expiration of said time by the Supreme Court or a judge thereof for good cause shown."

A definition of appellant in the case of cross-appeal is not furnished by the 1927 Code, but there is nothing to indicate that the definition previously adopted by the Supreme Court, and at that time existing, should be nullified or made inoperative. While it is true that both the plaintiff and the defendant appeal in the event of a cross-appeal, yet, so far as the practice in this court is concerned, one is designated the appellant, and the other the appellee. Thus it has been for many years, under rules of this court, and thus it was, as before suggested, when the statute was changed. Under the circumstances, we are inclined to the opinion that the statutory change was in recognition of our existing rules in that regard, rather than a repudiation of them. This is made more apparent because the legislature did not enter that particular field already covered by the court rules. Of

course, if an abstract is not filed by either appellant within the time allowed, the case will be dismissed. The second appellant takes his chances on that. Necessarily, then, it was not incumbent upon the appellees, in the case at bar, to duplicate the abstract. They could amend it, if the record was not sufficiently contained therein. Such conclusion is consistent with the long-continued practice in this state. Appellant's motion to dismiss appellees' appeal is denied.

II. Returning now to the merits in appellees' appeal, we find they complain because the district court did not rescind the contract aforesaid on the ground of appellant's fraud and misrepresentations.

Briefly stated, the alleged fraud and misrepresentations consisted of deceiving the appellees concerning the soil and general character of the Guthrie County farm. More particularly stated,  appellees' contention is that the soil was rocky, and was foul with weeds, while a portion of the land was traversed by a creek, which overflowed at certain times of the year. Continuing their assertions, appellees say that, when the agents drove to this farm, they took a circuitous route, in order to deceive the former concerning the true character of the premises. After carefully reviewing the entire evidence, however, we are inclined to disagree with the appellees in this regard. The creek was in plain sight, and the rocks were visible. Moreover, appellees, on another occasion, while alone, visited the farm and inspected it fully. Under the circumstances, they are not entitled to a rescission of the contract.

III. Furthermore, appellees ask that the agreement be rescinded because the appellee Luella Wever did not have mental capacity to contract. She was adjudged insane in October, 1922.  Because of that adjudication, this appellee was confined in the state insane hospital at Clarinda. In six months she returned to her family, and has since remained, performing the duties of a housewife. Said mental condition was caused because a little eight-months-old child belonging to appellees fell headfirst into a pail of water and drowned. At the end of the six-months period, Mrs. Wever was paroled from the asylum, but she was not discharged as cured. Her husband

testified that such mental condition is apparently the same now as it was before. Mrs. Wever, her husband declares, is forgetful, and evidently does not know how to take care of herself or perform the ordinary duties of a housewife, unless constantly told and directed. To overcome that evidence, the appellant produced witnesses who testified that the appellee Luella Wever talked about the farms, made objections to offers of exchange, accompanied the parties on land-inspection trips, generally engaged in conversation, and acted in every respect as the ordinary, intelligent woman. Consequently, it is said by appellant that, although this appellee was declared insane, yet her insanity was not, at the time in question, of the kind that would in any way affect her ability to enter into the contract aforesaid.

Relating to the question of mental capacity, we said in *Waters v. Waters*, 201 Iowa 586, commencing on page 588:

"The term 'insane,' as there used [Ch. 177, 1924 Code], is defined by statute to include every species of insanity or mental derangement * * * (Section 3580, Code, 1924). * * * Obviously, an adjudication that one is mentally incapable of caring for his property has a greater tendency to establish a subsequent lack of testamentary capacity than an adjudication that he is afflicted with some—that is to say, under the statutory definition of the term, as applied to such a case, with any—form of insanity or mental derangement. 'Neither contracting nor testamentary capacity requires entire soundness of mind.' "

Likewise, this court declared in *Jones v. Schaffner*, 193 Iowa 1262, reading on page 1275:

" 'Neither contracting nor testamentary capacity requires entire soundness of mind.' *Burgess v. Pollock*, 53 Iowa 273, 275. A party cannot avoid a contract on the ground of mental incapacity unless it be shown that his insanity was of such character that he had no reasonable perception or understanding of the nature and terms of the contract. *Swartwood v. Chance*, 131 Iowa 714; *Campbell v. Campbell*, 51 Iowa 713; *Reese v. Shutte*, 133 Iowa 681. In the present case, notwithstanding the presumption, or the prima-facie effect of the adjudication of mental unsoundness many years before the trial of the partition case, the showing made by the entire record sufficiently demonstrates

Mary E. Jones's competency, at the time of said trial, to understand and transact the business pertaining to the settlement of her husband's estate and the partition of the property of which he died seized, and that she acted intelligently and understandingly in her participation in the partition suit.''

According to statements contained in her own husband's testimony, and other facts and circumstances presented, Luella Wever comprehended the matters involved in the present exchange contract, and acted intelligently concerning the same. She knew the true nature and terms of the agreement. That is the test. *Mathews v. Nash*, 151 Iowa 125; *Mitchell v. Mutch*, 180 Iowa 1281; *Evers v. Webb*, 186 Iowa 1172; *Rickman v. Houck*, 192 Iowa 340. Throughout the period under consideration, appellant had no knowledge of said appellee's insanity.

A study has been made of the entire record and the authorities cited by the respective parties, and, after so doing, we are constrained to hold, as did the district court, that Mrs. Wever had the mental capacity to contract (though so weak as to affect specific performance), even though the death of her child caused a condition which previously necessitated treatment in the insane hospital. Rescission, then, was properly denied.

IV. Attention will now be directed to appellant's appeal. He insists that his prayer for specific performance should have been allowed. Basis for this is predicated upon the fact that the contract previously named had been entered into with appellees, and the same is not subject to rescission. Continuing his argument, appellant asserts that the agreement was obtained without fraud or overreaching, and in view of those facts, specific performance should be granted, in equity.

Responding to that contention, appellees maintain that, even though the trial court denied rescission of the contract, appellant is not entitled to specific performance thereof, under the facts and circumstances here presented. We are inclined to agree with the appellees in this regard. Three considerations are material at this point. They are: First, a marked difference in the value of the two farms; second, the mental condition of the appellee Luella Wever; and third, imperfection of title. These subjects will be considered in the order named.

V. Notwithstanding the fact that the trial court held there

was no fraud which warrants rescission, appellant's overreaching in reference to the value may be considered in denying specific performance. 25 Ruling Case Law 239, Section 41. The following is the text:

"It is not necessary to authorize the denial of the desired relief that the agreement should be so tainted with fraud that a chancellor would cancel it, for the fraud may be such that chancery will decline either to enforce it or cancel it."

Fraud, or overreaching, because of the degree thereof in a given case, may not alone be sufficient to prevent specific performance, but, when taken together with other conditions and circumstances, will be enough to prevent that special relief. *Wright v. Pirie*, 188 Iowa 1166. Therein this court said:

"Standing alone, neither the evidence of fraud nor mental incompetency would probably justify the court in refusing a decree of specific performance; but, when considered together with all of the circumstances surrounding the transaction, and the conduct of the parties, we are not prepared to hold that the trial court abused its discretion in denying the prayer of plaintiff's petition. The contract was inequitable, to the extent, at least, that it allowed plaintiff a profit of $2,000 or more."

See, also, *Schneider v. Schneider*, 125 Iowa 1.

Dana Wever, the appellee, was a farmer, who had but little experience in the business world. On the other hand, the appellant was an experienced real estate dealer, and understood the value of farm lands generally. Likewise, the agents who initiated this particular deal understood land values. Said agents at all times persisted, and persuaded appellees first to make, and then to carry out, the contract. To say that appellees sought and obtained a bargain is not quite right. The Guthrie County land belonging to appellant was some distance from the vicinity where appellees were acquainted with land values. Reliance during the negotiations was made by appellees upon appellant's declarations concerning the worth of his farm. Obviously, appellees were not acquainted with that value.

In its decree, the district court found that appellant's land was worth $6,840 less than that owned by the appellees. Criticism of this judicial conclusion is made by appellant; yet, after

a careful and full consideration of the matter, we are persuaded to agree with the district court. There is much conflict in the evidence. Appellant's witnesses value the Guthrie County land at a high figure, and place the worth of the Audubon County farm very low; and conversely, appellees' witnesses do the opposite. An intermediate position appears to be right, under all the facts and circumstances.

Figuring appellant's land on the basis of $190 an acre for the east quarter and $140 per acre for the west fractional quarter, the aggregate value is $51,960. Deducting therefrom a mortgage of $40,800, the remaining equity is $11,160. Taking a conservative ground, also, on the matter of valuing the Audubon farm, it is found that is worth approximately $150 per acre. Of this farm, there were 120 acres, and hence the aggregate value thereof is $18,000. Thus, subtracting the $11,160 equity in the Guthrie County realty from the $18,000 value of the Audubon farm, the net difference is $6,840, which is the basis upon which the district court entered its decree. Considering, as we must, the nature of each farm, its general improvements, the time concerned, and other essential facts and circumstances, it is manifest that the values fixed result in justice and fairness. Both farms are well improved, and under a good state of cultivation. Their locations are desirable. All those matters have been taken into account, and it seems that the values thus fixed are correct.

With such inequality in values as a basis for their argument, appellees urge that specific performance should not be allowed. While doing so, they recognize the law contended for by appellant and announced in *Shisler v. Catholic Cem. Impr. Assn.*, 207 Iowa 306; *Mitchell v. Mutch*, 180 Iowa 1281; *Martin v. Toll*, 196 Iowa 388; *Carson v. Mikel*, 205 Iowa 657; *Kurtz v. Gramenz*, 198 Iowa 222; *Cohen Bros. Iron & Metal Co. v. Shackelford Brick Co.*, 197 Iowa 674. A quotation from *Shisler v. Catholic Cem. Impr. Assn.*, supra, will illustrate the underlying thought in the cases cited:

"Specific performance, generally speaking, is not a matter of right, but rather of sound judicial discretion. * * * Right thereto depends upon elements, conditions, and incidents which equity regards as essential to the administration of all its peculiar modes of relief. * * * However, the granting of such re-

dress is not 'a mere matter of caprice on the part of a chancellor.' * * * Nor is it 'a mere matter of grace.' Therefore, in a proper case it is not to be denied unless some good reason is shown for so doing.''

While conceding the rule as thus stated, appellees maintain that it does not furnish a basis upon which to predicate specific performance in this case. The facts here are different from those presented in the cases cited. Unequal values of the respective properties involved in an exchange have always been important when determining whether specific performance should be allowed. If the inequality is small, it may be disregarded, but when the difference in value is so great as to shock the conscience of the court, and indicate an overreaching, specific performance will be denied. Upon this subject we said, in *Lucas v. Barrett*, 1 G. Greene (Iowa) 510, reading on page 525:

''This inadequacy of consideration throws an inequitable color upon the transaction, and gave Barrett just cause for the exercise of his reserved power of disaffirming the contract. It can hardly be expected that a court of equity will lend its aid to enforce a performance, unless the contract appears fair, just, reasonable, and founded upon what may be regarded as near an adequate or at least an honest consideration * * *. Story, in his Commentaries on Equity, Vol. 2, Sec. 769, says, 'An agreement, to be entitled to be carried into specific performance, ought to be fair and just in all its parts. Courts of equity will not decree a specific performance in cases of fraud or mistake, or of *hard and unconscionable bargains.*' '' (The italics are ours.)

Again, we suggested in *Smith v. Shepherd*, 36 Iowa 253, on page 254:

''Courts of equity will not interfere to decree a specific performance, except in cases where it would be strictly equitable to make such a decree. It is not the doctrine of courts of equity to carry into specific execution every contract, in all cases, where that is found to be the legal intention and effect of the contract between the parties. Specific performance will not be decreed if there is inequality and hardship in the contract * * *.''

Furthermore, we declared in *Griffin v. Nash*, 187 Iowa 345, on page 348:

"Specific performance of a contract is seldom a matter of right, and should not be granted in aid of a party seeking to enforce an unjust or inequitable contract."

Distinction is to be made between cases where the parties are mistaken about future values and values brought about by changing markets, etc. Elements of that nature are not involved here. Before us is a situation where actual existing present values are unequal and inequitable. The total value of appellees' farm was $18,000. Yet the difference between that amount and the equity in appellant's land was $6,840. Such difference is something more than one third the entire value. This inequality, together with appellee Luella Wever's mental condition and the defective title, is sufficient to justify the court in denying specific performance.

VI. Luella Wever's mental capacity, before described, must now be considered in connection with this phase of the discussion. Assuming, as before indicated, that said appellee had ability to enter into a contract, yet the condition of her mind may be considered, together with the gross inequality of land values aforesaid in determining the equities between the respective parties. Undoubtedly, according to the record, this particular appellee's mind was in such condition that she more readily relied upon others, and therefore permitted the appellant and the real estate agents to unduly persuade her to exchange the Audubon County farm, including her homestead, worth $18,000, for an equity in the highly incumbered Guthrie County land, valued at $11,160. See *Wright v. Pirie* (188 Iowa 1166), supra.

VII. Moreover, in connection with the inadequacy of consideration and the mental condition of the appellee Luella Wever, there is to be considered the imperfection of title previously suggested. Apparently the $40,800 mortgage was held by T. R. Watts, as trustee. Many beneficiaries were concerned. Watts was acting in a representative capacity only. It is important to know that said mortgage, according to the transfer agreement, was to be renewed for a period of five years. Obviously the renewal affected each beneficiary. A purported ex-

tension agreement was signed by the trustee, as such, without the consent of the beneficiaries, so far as the record in the recorder's office is concerned.

At the trial, however, there was introduced in evidence an instrument purporting to authorize the trustee to make the renewal. This instrument was not filed of record, nor was it signed by all the beneficiaries. For at least two of the beneficiaries, the trustee appears to have signed, as agent, through an authorization taken over the telephone. Other beneficiaries do not appear to have either signed or given their consent to the signing of such authorization for the extension. But it is urged by the appellant that the beneficiaries who did not sign the authorization had previously transferred their interests in the mortgage to the Citizens' State Bank, which did sign the authorization. Notwithstanding appellant's contention in that regard, it is clear that the beneficiaries were not made parties to the present suit, and are not bound by the record there made, so far as their individual interests in this particular mortgage are concerned.

With the record in that condition of uncertainty and irregularity, it cannot be said that the appellant furnished the appellees a valid, legal extension of the mortgage. Hence, considering the whole record, including the inadequate consideration, the mental condition of the appellee Luella Wever, and the situation with reference to the extension, we are constrained to say that the trial court did not abuse its discretion in denying appellant the specific performance of said contract.

VIII. One further complaint is made by appellant. He says the district court should have allowed him damages for appellees' breach of contract. Referring to the trial court's decree, we find the following paragraph:

"It is therefore ordered and decreed that [the appellant's petition for specific performance is] dismissed, all without prejudice to the rights of either party to litigate the matters herein involved in a court of law."

Manifestly, that tribunal did not abuse its discretion, and the appellant has no well founded reason for objecting thereto. In *Fisher v. Trumbauer & Smith,* 160 Iowa 255, on page 261,

we approved the following language from *Reiger v. Turley*, 151 Iowa 491:

"'When equity has once obtained jurisdiction of a controversy, it will determine all questions material or necessary to the accomplishment of full and complete justice between the parties, even though in doing so it may require passing on some matters ordinarily cognizable at law.' But here the equities, though alleged, were not proven, and that was the ground for denying equitable relief. The practice in such a case, in the absence of statutory provisions to the contrary, is to dismiss the cause and relegate the parties to an action at law, as was done by the district court in this case." (Many cases are cited.)

Likewise, in *Wright v. Pirie* (188 Iowa 1166), supra, after considering a case in some respects similar to the one at bar, our concluding sentence was:

"We think, however, that plaintiff should have the right, if he so desires, to pursue his remedy at law for damages for the alleged breach of the contract."

Clearly, the procedure followed by the district court was proper, in view of the fact that appellant did not prove his cause in equity. Having failed in that regard, it was right to relegate him to the law courts, where he may, if he chooses, pursue his remedy, if any he has.

Wherefore, the judgment and decree of the district court should be, and hereby is, affirmed on both appeals. One half of the costs should be paid by appellant, and the other half shall be borne by the appellees.—*Affirmed on both appeals.*

MORLING, C. J., and EVANS, STEVENS, and GRIMM, JJ., concur.

FAVILLE, J., joins in result.